(No. 67282.—■■■■■■■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PEGGY AUSTIN, Appellee.

*Opinion filed November 22, 1989.—Modified on denial of rehearing January 29, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Joseph G. Howard and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Ruth A. McBeth and James H. Reddy, Assistant Public Defenders, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Peggy Austin, was convicted of the murder of Helen Richard and received a sentence of 30 years' imprisonment. Due to the circuit court's refusal to allow the defendant's tendered jury instruction regarding voluntary manslaughter based on serious provocation, the appellate court reversed the conviction and remanded the cause for a new trial. (170 Ill. App. 3d 1047.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

On February 13, 1984, at approximately 7 p.m., the victim, a Chicago Transit Authority (CTA) bus driver, stopped her bus at the corner of 74th Street and Ashland Avenue in Chicago to pick up passengers. Defendant and several others who had been waiting at the bus

stop boarded the bus. Defendant placed her canvas bag on the first seat of the bus, dropped some change into the fare box and showed the driver a student bus pass. The driver informed defendant that she could not use the pass because it was a school holiday. Defendant stated she was only going a short distance, and asked if she could stay on the bus. The driver, however, stopped the bus and informed defendant that she would have to pay full fare, leave the bus, or be removed.

According to the testimony of other passengers on the bus, the driver began to reach for the telephone near her seat. Defendant then struck the driver in the face. The driver then arose from her seat and began to exchange blows with defendant. This altercation continued for 30 to 40 seconds until defendant pulled a gun from her waistband. The driver slapped or grabbed defendant's wrist and, in the struggle, defendant fired a shot into the floor of the bus. The momentum of their struggle allowed the driver to force defendant off the bus. After both parties had exited the bus, defendant shot and killed the driver. Defendant then fled the scene, only to return a few moments later to retrieve the canvas bag she had left on the bus. She then fled again, and the police apprehended her a short time later.

Defendant, testifying in her own defense, offered a slightly different view of these events. Defendant admitted that even though she paid only 80 cents of the $1 fare, she asked for a transfer (a ticket that allows CTA passengers to board connecting buses or trains without paying another fare) in order to catch another bus. The driver responded by telling defendant to "get the hell off the bus." Defendant then attempted to unlawfully take a transfer, and the driver prevented this by hitting defendant's hand with a CTA transfer punch. Defendant retaliated by striking the driver, which led to the altercation and the shooting as already described. Defendant testi-

fied that she carried a gun to protect her valuables in high-crime areas, and that she thought that brandishing the gun would frighten the driver into stopping the fight. She fired the first shot for the same reason. She stated that she did not know how the gun went off the second time, and that she did not intend to shoot the driver.

At the close of the trial, the circuit court, using Illinois Pattern Jury Instructions, Criminal, Nos. 7.02 and 7.06 (2d ed. 1981) (hereinafter IPI Criminal 2d), instructed the jury that it could find defendant guilty or not guilty of murder or, in the alternative, guilty or not guilty of voluntary manslaughter based on defendant's unreasonable belief that the killing was justified. Defendant moved for the voluntary manslaughter instruction based on serious provocation (IPI Criminal 2d No. 7.04), claiming that she had been in mutual combat with the bus driver. The trial court refused to allow the instruction because defendant had initiated the altercation and the parties had not fought on equal terms, defendant having used a deadly weapon. The appellate court disagreed, noting that the evidence as to who was the aggressor was in dispute, and that the testimony of the passengers, the evidence of defendant's and driver's similar size and the evidence of injuries defendant sustained during the fight combined to constitute enough evidence of serious provocation to require the second voluntary manslaughter instruction. 170 Ill. App. 3d at 1049-50.

The issue on appeal to this court is whether the appellate court was incorrect in finding that there was any evidence of serious provocation because of mutual combat which would require the provocation voluntary manslaughter instruction. In a reply brief, defendant also contends that the instruction the trial court gave the jury, regarding voluntary manslaughter because of an unreasonable belief that the killing was justified, was erroneous because of the flawed phrasing of that instruc-

tion. However, any error in giving or refusing instructions will not justify a reversal when the evidence in support of the conviction is so clear and convincing that the jury's verdict would not have been different. (*People v. Ward* (1965), 32 Ill. 2d 253, 256; *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 1104.) Our review of the record in this case reveals that there was no evidence presented at trial to support defendant's claim that she believed that, at the time of the shooting, circumstances existed which would have justified killing the bus driver. Because the evidence did not support even a correctly phrased instruction, an erroneous instruction on the crime of voluntary manslaughter based on belief of justification could not have prejudiced the defendant. *People v. Chevalier* (1989), 131 Ill. 2d 66, 71.

Voluntary manslaughter, under the version of section 9—2(a) of the Criminal Code of 1961 applicable to the present case,[1] was an unjustifiable homicide where the assailant is under a sudden and intense passion resulting from serious provocation by the victim. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a).

Whether to tender a jury instruction on voluntary manslaughter is within the discretion of the trial court. (See *People v. Jacobs* (1976), 44 Ill. App. 3d 290, 292-93.) This discretion, however, is controlled by clear guidelines from this court. If there is evidence in the record that, if believed by the jury, would reduce a crime from murder to manslaughter, a defendant's request for a manslaugh-

---

[1]Effective July 1, 1987, the Illinois General Assembly amended the Criminal Code and abolished the offense of voluntary manslaughter, replacing it with the offense of second-degree murder. The elements of the new offense are essentially the same as the old, except the General Assembly added a section clearly explaining both the State's and defendant's burdens of proof at a murder trial. Ill. Rev. Stat. 1987, ch. 38, par. 9—2; see *People v. Reddick* (1988), 123 Ill. 2d 184, 197.

ter instruction must be granted. (*People v. Handley* (1972), 51 Ill. 2d 229, 235; *Jacobs*, 44 Ill. App. 3d at 292.) Defendant has the burden of proving there is at least "some evidence" of serious provocation or the trial court may deny the instruction. (*People v. Neal* (1983), 112 Ill. App. 3d 964, 966.) The evidence upon which defendant relies must rise above the level of a mere factual reference or witness' comment, for otherwise defendant could force the trial court to include unlimited instructions which are not related to the case. *People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41.

Passion on the part of the slayer, no matter how violent, will not relieve her from liability for murder unless it is engendered by a provocation which the law recognizes as being reasonable and adequate. If the provocation is insufficient, the crime is murder. (*Chevalier*, 131 Ill. 2d at 73; *Neal*, 112 Ill. App. 3d at 967-68; *People v. Matthews* (1974), 21 Ill. App. 3d 249, 253.) Both at trial and before the appellate court, defendant maintained that she presented some evidence of mutual quarrel or combat. Illinois courts recognize that evidence of mutual combat is sufficient to require an instruction to the jury on voluntary manslaughter due to serious provocation. (See *People v. Fausz* (1983), 95 Ill. 2d 535, 539; *People v. Leonard* (1980), 83 Ill. 2d 411, 420-21; *People v. Crews* (1967), 38 Ill. 2d 331, 335-36; *People v. Miller* (1981), 96 Ill. App. 3d 212, 214.) Mutual combat is a fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat. (*Neal*, 112 Ill. App. 3d at 967; *Matthews*, 21 Ill. App. 3d at 253.) In the case at bar, there was no evidence of mutual combat. The record shows that the bus driver did not enter the struggle willingly, and that the fight was not on equal terms.

One who instigates combat cannot rely on the victim's response as evidence of mutual combat sufficient to mitigate the killing of that victim from murder to manslaughter. (*People v. Harris* (1984), 123 Ill. App. 3d 899, 906; *People v. Causey* (1978), 66 Ill. App. 3d 12, 15; see *United States ex rel. Bacon v. DeRobertis* (N.D. Ill. 1982), 551 F. Supp. 269, 272 (applying Illinois law), *aff'd* (7th Cir. 1984), 728 F.2d 874.) In this case, the appellate court ruled that defendant's testimony regarding the bus driver hitting her first raised enough of a question as to who the aggressor was to show some evidence of mutual combat. (170 Ill. App. 3d at 1050.) We disagree with this ruling. Defendant admitted that she had wrongfully boarded the bus and had attempted to wrongfully take a bus transfer. By striking defendant on the hand with the transfer punch, the driver was preventing defendant from stealing a transfer. Thus, the record shows that defendant initiated the events in this case by attempting to illegally use CTA services, and the bus driver, in striking defendant, was responding to defendant's illegal act. Defendant cannot rely on a CTA employee's response to such conduct to disprove the fact that defendant instigated the combat, or to intimate that the bus driver's response in this case was a willing entry into the combat that followed.

The record also shows that the struggle was not on equal terms. The appellate court in this case focused on the physical size of the combatants, the injuries defendant sustained in the fistfight, and the testimony of other passengers that the physical struggle was a "fairly even battle." (170 Ill. App. 3d at 1049-50.) This emphasis is misplaced. In considering whether defendants have met the threshold burden of proving some evidence of mutual combat, it has been held that the alleged provocation on the part of the victim must cause the same passionate state of mind in an ordinary person under the same circumstances. A slight provocation is not enough, because

the provocation must be proportionate to the manner in which the accused retaliated. The crime is murder when a defendant attacks a victim with violence out of all proportion to the provocation. This is especially true if the homicide is committed with a deadly weapon. (*Neal*, 112 Ill. App. 3d at 967-68; *People v. Miller* (1981), 96 Ill. App. 3d 212, 214-15; *Matthews*, 21 Ill. App. 3d at 252-53; see *Bacon*, 551 F. Supp. at 272 (applying Illinois law).) One appellate court decision expressly held that where a defendant attacks a victim on slight provocation with disproportionate violence, the mutual combat aspect of provocation does not apply as a matter of law. *People v. Ford* (1987), 163 Ill. App. 3d 497, 503.

The record in this case indicates that defendant shot and killed an unarmed victim who provoked defendant by speaking gruffly to her and striking her on the hand with a transfer punch. At the most, the victim provoked defendant by engaging in a "fairly even" fistfight for 30 to 40 seconds and forcing her off the bus. Defendant testified that she was afraid and wanted to cease the altercation with the bus driver. There is nothing in the record, however, to objectively indicate that defendant had reason to fear for her life. Shooting the driver was an act completely out of proportion to the provocation. Therefore, mutual combat cannot apply.

The appellate court found further support for reversing defendant's conviction by comparing this case with two cases where this court held that the refusal to give the provocation manslaughter instruction was improper. (170 Ill. App. 3d at 1050, citing *People v. Leonard* (1980), 83 Ill. 2d 411, 422, and *People v. Craven* (1973), 54 Ill. 2d 419, 425.) The appellate court held that these cases controlled, noting that in *Craven* the defendant was the aggressor and suffered injury due to the ensuing struggle. (170 Ill. App. 3d at 1050.) Under this precedent, and in view of a similar situation in *Leonard*, the appellate court held that

the jury should have been allowed to consider the provocation issue and that it could have concluded that there had been mutual combat between defendant and the victim. 170 Ill. App. 3d at 1050.

The appellate court's reliance on these precedents is also misplaced. The *Craven* case is not in point. In *Craven*, the victim was armed (*Craven*, 54 Ill. 2d at 420-21), and there was some evidence that defendant intervened in a fight already in progress to prevent the victim from pistol-whipping a third party (54 Ill. 2d at 423). *Leonard* is also not in point. While the decision in that case was partially based on evidence of mutual combat due to defendant's injuries in a situation where defendant was allegedly the instigator (*Leonard*, 83 Ill. 2d at 421), there is a key difference between *Leonard* and the case at bar. The defendant in *Leonard* manifested behavior which suggested he had acted under an intense passion. (83 Ill. 2d at 414-16, 421 (defendant shouted obscenities at victim for some time after the struggle, and manifested other signs of intense anger).) In the case at bar, however, defendant merely fled the scene of the shooting, returned shortly thereafter to retrieve belongings she left behind, and then fled again. There is no testimony or evidence in the record to indicate she was acting under an intense passion at the time the shooting occurred. Therefore, the circuit court's refusal to tender the instruction regarding voluntary manslaughter based on provocation was proper.

The judgment of the appellate court is reversed. As the appellate court reversed the defendant's conviction without addressing certain other issues, the cause must be remanded to that court for further consideration of those issues.

*Appellate court reversed;*
*cause remanded.*