THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK DOWER, Defendant-Appellant.

First District (1st Division)   No. 1—88—1646

Opinion filed August 26, 1991.

Randolph N. Stone, Public Defender, of Chicago (Anne C. Myles-Smith and Vickie Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gail O'Brien, and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from a jury verdict finding defendant, Frank Dower, guilty of murder. Defendant was sentenced to 40 years' imprisonment. Defendant contends that (1) the voluntary manslaughter instruction erroneously stated the burden of proof on the issue of whether he acted under a reasonable belief in self-defense; (2) improper comments made by the prosecution in closing and rebuttal arguments deprived him of a fair trial; (3) his conviction should be reversed because the trial court refused to instruct the jury on a lesser included offense; (4) his guilt was not proved beyond a reasonable doubt because the evidence supports a conviction for voluntary manslaughter, not murder; and (5) the trial court abused its discretion in imposing a 40-year sentence on defendant.

On December 4, 1986, Officer James O'Donnell and Officer Joseph Edisic found the body of Constance Dillon in the apartment located at 4126 West 24th Place in Chicago. Officer Frank DeMarco of the Chicago police department crime laboratory testified that he went to the apartment and found the victim facedown on the bed with her head on the bed and her feet and legs on the floor. Alongside the bed on the floor, police found a metal blade knife with a wooden handle on the opposite side of the bed from where the victim was found, approximately six feet away from her. Officer DeMarco examined the knife and found no blood and no fingerprints on it. Additionally, there was no blood or brain matter on the floor near where the knife was found.

Officer Terrence Thedford was assigned to investigate the murder. In an attempt to find defendant, Thedford went to the home of a

woman who the officer thought might know where defendant was, to defendant's recent places of employment and to defendant's mother's home. Defendant was not at any of these places. Thedford also went to defendant's sister's and brother's homes and spoke with them. Defendant was not there and his sister and brother did not know where he was.

At 2:30 p.m., defendant turned himself in to a newscaster and was taken to the police department. Defendant revealed where he had thrown the gun. Police found a .38 revolver where defendant indicated it would be. The gun contained one spent bullet casing and one live bullet.

At 6:30 p.m., Assistant State's Attorney Kelley informed defendant of his *Miranda* rights. Defendant told Kelley that prior to the shooting, he had been out with his friends drinking alcohol and snorting cocaine. Defendant claimed to have arrived home at 12:30 a.m. Defendant asserted that the victim was waiting for him at the back door. The couple argued about defendant being out late. Thereafter, defendant ate something and retired to the bedroom to watch television. Defendant claimed to have fallen asleep and awakened to find the victim standing over him with a knife. Defendant and the victim argued about the paternity of their youngest son. Defendant stated that the victim never raised or threatened him with the knife, but that she always kept it at her side. Defendant did not believe that he was the father of the child, so defendant and the victim continued to argue. During the argument, defendant reached under the mattress, pulled out the .38 revolver and shot the victim.

After Kelley and the police retrieved the gun, Kelley took a handwritten statement from defendant. Defendant explained what had happened and Kelley wrote it down; Kelley did not ask any questions during this time. Defendant and his mother read the statement out loud, made corrections and initialed the changes. Both defendant and defendant's mother signed the statement.

After the close of the evidence at trial, the court denied defendant's request to submit Illinois Pattern Jury Instructions, Criminal, Nos. 7.03 and 7.04 (2d ed. Supp. 1987) (hereinafter IPI Criminal 2d), which are the instructions for voluntary manslaughter where the defendant suffers from sudden intense passion resulting from serious provocation by the victim. Instead, the jury received instructions for voluntary manslaughter where the defendant unreasonably believed circumstances did exist which would justify the killing of the victim.

■◣ ■ The Illinois Supreme Court held in *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, that IPI Criminal 2d No. 7.04

(voluntary manslaughter—provocation) and Criminal 2d No. 7.06 (voluntary manslaughter—belief of justification) erroneously state the burdens of proof on the issues of whether a defendant acted under sudden intense passion or unreasonable belief in justification. (*Reddick*, 123 Ill. 2d at 194, 526 N.E.2d at 145.) The Illinois Supreme Court found that either of the above IPI voluntary manslaughter instructions, when read in conjunction with the instruction for murder, fails to inform the jury that the burden to disprove the particular mitigating mental state rests upon the State. (*Reddick*, 123 Ill. 2d at 197, 526 N.E.2d at 145.) In *People v. Shields* (1991), 143 Ill. 2d 435, the Illinois Supreme Court held that because the holding in *Reddick* is of constitutional dimension and because the appeals before it were pending on direct review when *Reddick* was decided, the *Reddick* decision applies retroactively. (*Shields*, 143 Ill. 2d at 445.) Similarly, we find that since this case was on direct appeal when *Reddick* was decided and since the *Shields* court found that the giving of the disputed instructions together is of constitutional dimension, *Reddick* applies retroactively to the case at bar.

*Reddick*, however, does not mandate automatic reversal of convictions arising from trials in which the disputed instructions were given. (*Shields*, 143 Ill. 2d at 445.) In determining the effect of faulty jury instructions on the validity of a defendant's conviction, the instructions should not be judged in artificial isolation but must be considered in light of the record as a whole, including the evidence and arguments presented to the jury. (*Shields*, 143 Ill. 2d at 445-46; *Cupp v. Naughten* (1973), 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373, 94 S. Ct. 396, 400.) Furthermore, the errors identified in *Reddick* may be harmless. (*Shields*, 143 Ill. 2d at 446-47; *People v. Austin* (1989), 133 Ill. 2d 118, 123-24, 549 N.E.2d 331; *People v. Harris* (1989), 132 Ill. 2d 366, 395, 547 N.E.2d 1241, 1254.) Constitutional errors may be deemed harmless if it can be shown that the errors were harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.) The Illinois Supreme Court, in determining *Shields*, used the *Chapman* harmless error test to determine whether a retrial was necessary. *Shields*, 143 Ill. 2d at 447.

Those same principles of review apply to the circumstances in the case at bar. Here, defendant was found guilty of murder. Defendant claims that he was awakened by the victim standing over him with a knife in her hands. Defendant asserts that he and the victim argued about the paternity of their child. While arguing, defendant pulled out a gun and shot the victim. The jury was instructed on murder and on

the unreasonable belief form of voluntary manslaughter and found defendant guilty.

■ There is no evidence to support defendant's theory of the case. Defendant admitted that the victim did not threaten him and never raised the knife, but kept it by her side. The medical examiner testified that the victim was shot at close range and that the bullet entered her skull perpendicular to her skin. Defendant's theory is further discredited by the physical evidence that established that defendant was not lying in bed when he shot the victim and that the victim was not standing over him. In fact, the evidence indicates that both defendant and the victim were standing near the dresser when defendant· shot the victim, because there was a pool of blood found there and a trail of blood from that location to the bed where the victim was found. Further, the knife did not have any fingerprints or blood on it and it was found on the opposite side of the bed from where the victim allegedly stood. Moreover, defendant never claimed that he was afraid of the victim, that he believed the victim was going to try to hurt him or that he believed that his safety was in any way threatened by the victim. The evidence supporting the defendant's conviction is overwhelming, and therefore, does not constitute plain error. Further, we find that the evidence is so clear and convincing that the jury's verdict would not have been different had correct instructions been used and that the erroneous instructions were harmless beyond a reasonable doubt. See *Shields*, 142 Ill. 2d at 451.

■ Defendant contends that improper and misleading statements made by the State improperly shifted the burden of proof to defendant. Defendant asserts that the following statements by the State were improper:

"The first thing they didn't find was Frank Dower, because he fled. The police arrived on the scene. They were called there by some other people who had heard what went on ***. And they began then to look for Frank Dower. They went to his other addresses that they knew he had on past occasions used. He wasn't there. They went to his former places of employment. He wasn't there. They went to his sister's, his brother's. He wasn't there, wasn't in any of these locations. Then the police continued to look for him throughout the day, leaving cards, leaving messages with these friends, relatives, telling them that they wanted Mr. Dower; that his wife had been shot and killed; and that he was nowhere to be found."

And:

"He killed his wife that evening, fled, then threw the gun in a gangway. The next day it was later recovered by the police, then he told them where it was, fled from the scene, stayed in a hotel until he decided that he knew what he wanted to do. Then he conjured up, in his own mind what he expected to tell the police ***."

Defendant failed to object to these statements at trial. The Illinois Supreme Court has held that in order to preserve an issue for appellate review, defendant must make a contemporaneous objection at trial and a written post-trial objection. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; Ill. Rev. Stat. 1983, ch. 38, par. 116—1.) The plain error exception to this rule is that there is no waiver if the evidence is closely balanced. (*Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1130.) We have, however, found that the evidence in this case is not closely balanced, and therefore, the error was not so egregious as to invoke the plain error exception. (See *Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1130.) Thus, defendant has waived his right to appeal these comments. See *Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1129.

■ Defendant argues that the following statement was improper because the evidence clearly showed that the wooden handle of the knife was too porous to hold any fingerprints:

"We submit to you, there were no fingerprints on that knife, ladies and gentleman, the evidence will show you, because Mr. Dower planted that knife there in an attempt ***."

Defendant did object to this statement at trial. The trial court responded, "Alright this is the State's opening, what they expect the evidence will show." There was testimony that the handle of the knife was wooden and an unlikely conduit for fingerprints. Additional testimony, however, established that the knife had a metal blade and the evidence technician stated that "[t]he knife was clean, just like it had been washed." Moreover, when the knife was discovered lying on the floor, there was not any blood or brain matter on or near the knife. The knife was found on the opposite side of the bed from where the victim allegedly stood. The deputy medical examiner testified that the bullet wound the victim received made her muscles relax immediately and that the victim died almost instantly. The victim, therefore, could not have thrown or moved the knife. The evidence taken as a whole indicates that defendant planted the knife. Thus, we hold that the State's comment to that effect was not improper.

■ The last statement that defendant contends was improper was made by the State in its closing argument as follows:

"This is nonsense. It never happened like that. Ladies and gentleman, this was a cold blooded thought-out, planned execution \*\*\*."

The State is granted wide latitude in making closing arguments, and the trial court's determination as to the prejudicial effect will generally be followed absent a clear abuse of discretion. (*People v. Bracy* (1986), 152 Ill. App. 3d 566, 575-76, 504 N.E.2d 764, 770.) The medical examiner testified that the victim was 5 feet 2 inches tall and weighed 120 pounds. Defendant is 6 feet 1 inch tall and at the time weighed 185 pounds. The victim was shot from a distance of 18 to 24 inches, and the bullet entered her skull perpendicular to the skin, just above her left eye. This evidence indicates that defendant was holding the gun level to victim's head within two feet of her. The evidence of the position in which the knife was found in relation to the body and the fact that the knife was "clean" establish that the victim was an unarmed, 120-pound girl. Even if defendant's testimony was believed by the jury, defendant testified that the victim never raised or threatened defendant with the knife. The State's comment was a reasonable inference and, therefore, a proper comment.

In rejecting defendant's request that the jury be instructed as to voluntary manslaughter based on sudden and intense passion resulting from serious provocation, the trial judge found that there was not any evidence to support a verdict based on the above. It is within the trial court's discretion to determine which instructions to render to the jury. (*People v. Jacobs* (1976), 44 Ill. App. 3d 290, 357 N.E.2d 821.) The voluntary manslaughter instruction based on sudden and intense passion will not be given unless the defendant produces some evidence that, if believed by the jury, would reduce the crime from murder to voluntary manslaughter. (*People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131.) The defendant bears the burden of showing at least some evidence of serious provocation and actual sudden and intense passion. (*People v. Neal* (1983), 112 Ill. App. 3d 964, 446 N.E.2d 270.) The evidence upon which defendant relies must rise above the level of a mere factual reference or witness' comment, otherwise, the defendant could force the trial court to include unlimited instructions which are not related to the case. *Austin*, 133 Ill. 2d at 125, 549 N.E.2d at 334.

Relying on *People v. March* (1981), 95 Ill. App. 3d 46, 419 N.E.2d 1212, 1217, and *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451, defendant asserts that courts have recognized that mutual combat is serious provocation. The courts consider mutual combat to be a "fight or struggle which both parties enter willingly or where

two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results." (*Austin*, 133 Ill. 2d at 125, 549 N.E.2d at 334.) In the case at bar, there was no evidence of mutual combat. The record shows that defendant shot an unarmed, 120-pound girl. Even though defendant argued that the victim had a knife and was quarreling with him, defendant himself testified that the victim never raised or threatened him with the knife and that he was not afraid of the victim.

■ In considering whether defendant has met the threshold burden of proving some evidence of mutual combat, the alleged provocation on the part of the victim must cause the same passionate state of mind in an ordinary person under the same circumstances. (*Austin*, 133 Ill. 2d at 126, 549 N.E.2d at 335.) A slight provocation is not enough, because the provocation must be proportionate to the manner in which defendant retaliated. (*Austin*, 133 Ill. 2d at 126-27, 549 N.E.2d at 335.) This is especially true if the murder is committed with a deadly weapon. (*Neal*, 112 Ill. App. 3d at 967-68, 446 N.E.2d at 274.) Where a defendant attacks a victim on slight provocation with disproportionate violence, the mutual combat aspect of provocation does not apply as a matter of law. (*People v. Ford* (1987), 163 Ill. App. 3d 497, 503, 516 N.E.2d 766, 770.) The trial court was within its discretion to find that defendant's retaliation, if that was, in fact, what it was, was disproportionate to the slight provocation on the part of the victim and that there was no mutual combat in defendant's case, as a matter of law.

■ A trial court's refusal to give an instruction will not justify a reversal when the evidence in support of the conviction is so clear and convincing that the jury's verdict would not have been different. (*People v. Bailey* (1986), 141 Ill. App. 3d 1090, 1104, 490 N.E.2d 1334, 1344.) As stated previously, the evidence in support of defendant's conviction is so clear and convincing that the jury's verdict would not have been different.

Defendant argues that in order for a jury to reject a defendant's claim of self-defense and to convict him of murder rather than manslaughter, the State must prove beyond a reasonable doubt that the defendant had no belief of imminent danger. Defendant argues that this was not done in his case. The jury had the opportunity to weigh the evidence and the credibility of the testimony presented. Determining the mental state of the defendant is within the province of the jury. (*People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 405 N.E.2d 1295.) The applicable standard of review is whether when viewing the evidence in a light favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, 472.

The jury had sufficient evidence upon which to determine that defendant acted with the requisite mental state to find him guilty of murder and to reject defendant's claim of self-defense. The jury's verdict is supported by the physical evidence, testimony elicited at trial and defendant's own statement. Defendant's conviction is supported by the evidence, and he was found guilty beyond a reasonable doubt.

Defendant asserts that the sentence imposed by the trial court was excessive. Defendant was convicted of murder. The sentencing guidelines used by the trial court in this court for first degree murder specify that the term shall not be less than 20 years, and not more than 40 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1.) The trial court's sentencing decision is entitled to substantial weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) This is especially true when a sentence is within the statutory limits. (*People v. Stambor* (1975), 33 Ill. App. 3d 324, 337 N.E.2d 63.) A sentence alleged to be excessive will not be disturbed upon review unless it is grossly disproportionate to the nature of the offense. *People v. Moore* (1988), 178 Ill. App. 3d 531, 533 N.E.2d 463.

Defendant argues that due to the facts that he had no prior felony convictions, was employed, is the father of two children and is 23 years old, the trial court abused its discretion in sentencing. The sentencing judge, however, is in the best position to consider matters relating to sentencing determinations and is allowed wide discretion in making a reasoned judgment as to the penalty appropriate to the particular circumstances of each case. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 531 N.E.2d 366.) Additionally, defendant argues that because the trial court did not articulate the consideration of defendant's potential for rehabilitation his sentence should be reduced. The trial court, however, is not required to give rehabilitative potential more weight than it gives the seriousness of an offense in its sentencing decisions. *People v. Tatum* (1989), 181 Ill. App. 3d 821, 537 N.E.2d 875.

Defendant cites cases in which the appellate court reduced a defendant's sentence. In *People v. Golden* (1974), 18 Ill. App. 3d 633, 310 N.E.2d 172, the appellate court only reduced the minimum portion of defendant's indeterminate sentence for possession of heroin. In *People v. Gill* (1972), 7 Ill. App. 3d 24, 286 N.E.2d 516, the defendant had only graduated from the ninth grade, was from a "cultural

backwater" and there was uncontradicted testimony that he was a good father and husband. Similarly, the appellate court reduced that defendant's indeterminate sentence. In the case at bar, there was no evidence that defendant was from a "cultural backwater." Here, defendant was not given an indeterminate sentence. More importantly, we know defendant was not a good boyfriend because he killed the mother of his children with whom he was living. Furthermore, it can be inferred that he was not a good father because he was supposedly arguing that he was not the father of his youngest son, he admitted snorting cocaine and left the infant, whose paternity he was disputing, with his dead mother while he fled the scene of the crime. The trial court did not abuse its discretion in sentencing defendant.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.