# Illinois Official Reports

## Appellate Court

---

### *People v. Minniefield*, 2015 IL App (1st) 141094

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY MINNIEFIELD, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-1094 |
| Filed<br>Rehearing denied | August 14, 2015<br>September 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 3-CR-1284; the Hon. Thomas J. Byrne, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Yasaman Hannah Navai, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Christine Cook, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1	Defendant Gregory Minniefield appeals the trial court's December 6, 2013, order striking defendant's *pro se* document which was entitled "Motion to Vacate Conviction/Sentence as Void."

¶ 2	Defendant was found guilty after a jury trial of first-degree murder and sentenced to a total of 50 years with the Illinois Department of Corrections. The sentence included a 25-year enhancement for personally discharging a firearm which proximately caused death. This court affirmed defendant's conviction and sentence on direct appeal on April 11, 2007. *People v. Minniefield*, No. 1-05-2792 (2007) (unpublished order under Supreme Court Rule 23). Defendant then filed a *pro se* postconviction petition which the trial court summarily dismissed. On May 28, 2010, this court reversed the trial court's summary dismissal and remanded for second-stage postconviction proceedings. *People v. Minniefield*, No. 1-08-0649 (2010) (unpublished order under Supreme Court Rule 23). After the remand, the trial court granted the State's motion to dismiss on January 15, 2013. On December 13, 2013, this court affirmed the trial court's second-stage dismissal. *People v. Minniefield*, 2014 IL App (1st) 130535.

¶ 3	While defendant's appeal of the second-stage dismissal of his postconviction petition was pending, defendant filed on November 27, 2013, a document entitled a "Motion to Vacate Conviction/Sentence as Void." The document claimed that he was wrongly sentenced under a firearm enhancement provision because the jury was incorrectly instructed under a modified instruction.

¶ 4	On this appeal, defendant characterizes this document as a section 2-1401 petition (735 ILCS 5/2-1401(a) (West 2012)), but concedes that he "chose the incorrect vehicle to present his claims" and that "a circuit court is not required to construe a collateral petition arguing constitutional violations as a post-conviction petition if the pleading does not explicitly invoke the [Post-Conviction Hearing] Act, as is the case here." In addition, defendant also observes that this court recently rejected his underlying substantive argument. *People v. Sharp*, 2015 IL App (1st) 130438, ¶¶ 79-80.

¶ 5	For the following reasons, we do not find defendant's arguments persuasive.

**BACKGROUND**

**I. The Evidence at Trial**

**A. The Events**

¶ 9	On direct appeal, we summarized the evidence at defendant's trial as follows:

> "The trial evidence demonstrated that, on December 17, 2002, defendant fatally shot the victim, Theopolis Ransberry. Immediately prior, defendant was driving a car with two passengers, his girlfriend and cousin. The victim was simultaneously driving his car with three passengers. Although defendant admitted that he shot the victim, the trial testimony conflicted regarding the exact chain of events leading to the victim's death. The State's witnesses, including the victim's passengers and defendant's cousin, testified that defendant instigated the exchange with the victim by shooting at the victim's car. Then, after the victim subsequently pulled his car over, defendant approached on foot and shot the victim several more times absent

provocation. Contrarily defendant testified that he did not shoot the victim until, after approaching the victim's car to merely talk, he thought the victim was reaching for a gun, and thus responsively shot the victim's hand twice. Then because the victim began to drive away while defendant's hand remained partially inside the car, defendant's hand hit the window causing the handgun to fire several more times." *Minniefield*, No. 1-05-2792, slip op. at 2.

## B. Defendant's Pretrial Confession

On direct appeal, we described defendant's pretrial confession as follows:

"At trial, Assistant State's Attorney (ASA) John Brady testified that defendant agreed to have his statement videotaped, and it was published to the jury over defense counsel's objections. In the statement, defendant admitted that he chased the victim's car on the day in question because they were engaged in an ongoing feud over money. Defendant further admitted that, while chasing the victim's car, he fired two gunshots into the air. Defendant additionally admitted that he approached the victim's car, grabbed the chain around his neck and demanded money that the victim owed him. The victim moved and defendant fired his handgun toward the victim's leg. Then, while defendant's handgun remained inside the car, the car moved approximately two feet causing defendant to shoot the victim four additional times. Defendant admitted that no one was armed in the victim's car. Defendant knew that bullets hit both the victim and Roshawn Adams, one of the passengers; however, he fled the scene and disposed of his handgun. Defendant stated that he merely intended to scare the victim, not to hurt him." *Minniefield*, No. 1-05-2792, slip op. at 2.

## C. Defendant's Testimony at Trial

We described defendant's trial testimony as follows:

"Defendant testified that, in April 2002, he and the victim had a conversation during which the victim denied involvement in an incident with defendant's girlfriend. He further testified that, early in the afternoon on the day in question, defendant was driving with his two-year old son when the victim opened fire at defendant's car. Defendant found a police officer in the area and reported the incident; however, the officer was forced to leave on an emergency call. At some point during the day, defendant purchased a loaded handgun for protection.

Later in the evening, defendant was driving with his girlfriend, Nicole Saunders, and his cousin, Erica Simmons, when he recognized the victim's car pass him and stop. Defendant approached the victim's car on foot, armed with his handgun, to talk to him about a misunderstanding involving Sanders. Defendant, however, saw the victim reach for what he thought was a handgun, and as a result, shot inside the car in an attempt to shoot whatever the victim was trying to retrieve. After firing two shots, the victim began to drive away. Defendant's hand, however, was still inside the car. As a result, the window frame hit defendant's hand causing the gun to fire several more times. Defendant testified that he did not intend to fire the handgun and he did not think that he shot anyone.

Defendant further maintained that he was mistreated while in police custody, and despite expressly invoking his rights to an attorney and to remain silent, his *Miranda* rights were violated.[1] *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant claimed that he told Detective Ron Lewis and Timothy Nolan that the victim threatened him and that he shot the victim because he thought the victim was reaching for a weapon. Defendant, however, admitted that he did not make the same claims in his videotaped statement.

On cross-examination, defendant stated that he thought the victim initially shot at his car because the victim mistakenly thought that defendant was involved in a prior attack on the victim, which was actually instigated by defendant's girlfriend. He admitted, however, that during the incident the victim did not make any threats." *Minniefield*, No. 1-05-2792, slip op. at 2-4.

¶ 14                    D. The State's Rebuttal Evidence

¶ 15     We described the State's rebuttal case as follows:

"In rebuttal, Detective Lewis testified that defendant did not report that the victim shot at him while he was driving his son or that he thought the victim was reaching for a handgun. On cross-examination, however, Lewis admitted that defendant told him that the victim had threatened defendant. Also, in rebuttal, Detective Nolan reiterated that defendant did not report that the victim shot at him. On cross-examination, however, Nolan admitted that defendant [stated] that he only shot inside the victim's car because the victim was reaching for something." *Minniefield*, No. 1-05-2792, slip op. at 4.

¶ 16                          E. Jury Instructions

¶ 17     At the jury instruction conference, defense counsel requested instructions on both second-degree murder and self-defense, which the trial court gave over the State's objection.

¶ 18     The jurors were instructed that, in order to sustain the charge of first-degree murder, the State had the burden of proving that "the defendant was not justified in using the force he used."

¶ 19     As to when force is justified, the jurors were instructed:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

¶ 20     With respect to second-degree murder, the jury was instructed:

"You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

---

[1]Prior to trial, the trial court denied defendant's motion to suppress the statements he made while in police custody.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder. By this I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Theopulous Ransberry, believed the circumstances to be such that they justified the deadly force he used, but, his belief that such circumstances existed was unreasonable."

Thus, the jurors were also instructed to consider, if they first found that the State had proved that "the defendant was not justified in using the force he used" and he was guilty of first-degree murder, whether he had an unreasonable belief in the need for the use of deadly force.

¶ 21　After receiving their instructions, the jury convicted defendant of first-degree murder, and defendant was sentenced to 50 years of imprisonment, and his conviction was affirmed on direct appeal on April 11, 2007. *Minniefield*, No. 1-05-2792.

¶ 22　　　　　　　　　　　II. Postconviction Proceedings

¶ 23　Defendant filed a *pro se* postconviction petition on December 27, 2007, alleging ineffective assistance of counsel, which the trial court summarily dismissed as frivolous on February 6, 2008.

¶ 24　　　　　　　　　A. Reversal of First-Stage Dismissal

¶ 25　On appeal, this court reversed the summary first-stage dismissal on May 28, 2010 (*Minniefield*, No. 1-08-0649, slip op. at 7), stating:

"We find defendant's claim should have survived first-stage review because his allegation that counsel failed to investigate or present witnesses has an arguable basis in law and fact. [Citation.] As a threshhold matter, we note that defendant appended his own affidavit as well as one from Ratliff. A claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness. [Citation.] Therefore, we do not consider the proposed testimony from Knighton in our determination. [Citation.]

We find that defendant's allegation has an arguable basis in fact. At trial, defendant's testimony presented an 'imperfect self-defense' theory: that he fired his gun at the victim after believing he saw the victim reach for a gun. However, the State's testimony established that police did not recover a gun from the victim's automobile. In his petition, defendant alleged that Ratliff would testify that an unknown man removed a silver gun from the automobile before police arrived on the scene. Defendant appended an affidavit in which Ratliff averred as such, and also that counsel never investigated his statement. In his own affidavit, defendant averred that he told counsel about Ratliff and Knighton. Taken as true at this stage [citation], Ratliff's affidavit lends support to defendant's theory of defense and defendant's affidavit establishes that counsel knew of the witnesses. Therefore we cannot find the facts in defendant's allegations 'fantastic or delusional.' [Citation.]

We also cannot find defendant's allegation presented an indisputably meritless legal theory. A constitutional claim that a defendant did not receive effective assistance of counsel must demonstrate that it is arguable that counsel's performance fell below an objective standard of reasonableness and the defendant was arguably prejudiced as a result. [Citation.] Defendant testified at trial that he believed the victim was reaching for a gun and that based on this belief, fired one or two shots toward the victim. Testimony presented by the State established that the police did not recover a gun from the victim's automobile. The allegations related to Ratliff's testimony corroborate defendant's belief that the victim was reaching for a gun. We find this failure to investigate could arguably demonstrate that counsel's performance was objectively unreasonable. [Citation.] Finally, the affidavits support the allegation that counsel failed to investigate Ratliff's testimony. Although the evidence against defendant was strong, it is at least 'arguable' that evidence of a gun in the victim's car could have changed the outcome." *Minniefield*, No. 1-08-0649, slip op. at 5-7.

¶ 26    The appellate court did not reach defendant's second allegation concerning ineffectiveness based on a failure to ask for further jury instructions, since it was already reversing on the first issue. *Minniefield*, No. 1-08-0649, slip op. at 7.

¶ 27                          B. Trial Court's Order on Remand

¶ 28    On remand, counsel was appointed and filed a supplemental petition, supplementing the claims and allegations that defendant already made in his *pro se* petition.

¶ 29    In his *pro se* petition, filed in December 2007, defendant alleged that "prior to trial, I informed my trial attorney that Michelle Knighton and Thomas Ratliff were present[ ] after the shooting and saw an unknown male take a silver gun off the front passenger floor and [leave] with it before the police came" and that defense counsel was ineffective for failing to call these two witnesses to testify. Defendant also alleged that "defense counsel was ineffective for not requesting an involuntary manslaughter instruction where there was sufficient evidence to support it."

¶ 30    Counsel's supplemental petition argued (1) that trial counsel was ineffective for not calling Ratliff who indicated prior to trial that the victim was armed; and (2) that the newly available testimony of Noah Redic and Antoine Nash that the victim was armed with a gun would have changed the outcome at trial, resulting in an acquittal or reducing the conviction to second-degree murder. The supplemental petition stated that Ratliff was not a newly discovered witness and that his affidavit was submitted to support defendant's ineffective assistance claim.

¶ 31    Both Redic and Nash swore in their affidavits that defendant "stepped back" from the victim's vehicle immediately before firing the first shot. We previously observed that these statements contradicted defendant's trial testimony that he reached his hand inside the victim's vehicle to fire the first couple of shots at whatever the victim was reaching for on the floor. *Minniefield*, 2014 IL App (1st) 130535, ¶ 43.

¶ 32    The State moved to dismiss defendant's *pro se* petition as supplemented by counsel, and the petition proceeded to a second-stage hearing. The State conceded that Redic's and Nash's affidavits, which were submitted in support of defendant's actual innocence claim, were newly discovered but argued that they were not material. *Minniefield*, 2014 IL App (1st) 130535, ¶¶ 46-47. The State argued that Redic and Nash's testimony would not have

changed the result at trial because, at most, their affidavits showed mutual combat[2] not self-defense by defendant. Defendant testified that he was armed when he approached the victim's vehicle. Redic and Nash both swore in their affidavits that the victim said "Oh, sh***" when he observed defendant's approach and then reached for a gun. At most, this chain of events showed aggression by defendant, a self-defense response by the victim, and then shooting by defendant toward the seated victim. The State argued that this chain of events could not possibly serve as the basis for a self-defense claim by defendant.

¶ 33    On January 15, 2013, the trial court again dismissed the petition, ruling (1) that trial counsel was not ineffective for allegedly failing to investigate; and (2) that defendant had failed to make a substantial showing of actual innocence.

¶ 34    On appeal of the second-stage dismissal, defendant argued: (1) that he made a substantial showing that he acted in self-defense and thus is actually innocent; and (2) that his counsel was ineffective (a) for failing to ask for an involuntary manslaughter jury instruction and (b) for failing to investigate or call occurrence witnesses. We did not find these claims persuasive, and on December 31, 2014, we affirmed the trial court's second-stage dismissal of defendant's postconviction petition. *Minniefield*, 2014 IL App (1st) 130535, ¶¶ 51, 100. Defendant's petition for rehearing was denied on February 5, 2015.

¶ 35                    III. "Motion to Vacate Conviction/Sentence as Void"

¶ 36    While defendant's appeal of the second-stage dismissal of his postconviction petition was pending, defendant filed on November 27, 2013, a document entitled "Motion to Vacate Conviction/Sentence as Void." This document is the subject of the current appeal.

¶ 37    In this document, defendant claimed that his appellate counsel was ineffective for failing to challenge the trial court's imposition of a 25-year-to-life sentencing enhancement pursuant to section 5-8-1(a) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012)), which provided that:

> "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."

¶ 38    Defendant attached the modified first-degree murder instructions that were tendered to his jury, as well as a portion of the sentencing transcript during which his trial counsel objected to the imposition of the sentencing enhancement because the jury did not receive a separate verdict form for the firearm enhancement. Defendant claimed that he was wrongly sentenced pursuant to the firearm enhancement provision because the jury was not correctly instructed.

---

[2]"Mutual combat" has been defined by our supreme court as a "fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *People v. Austin*, 133 Ill. 2d 118, 125 (1989). See also *People v. Leach*, 2012 IL 111534, ¶ 152 (the offense of first-degree murder may be "mitigated" to second-degree murder if the defendant "killed while under the influence of a sudden, intense passion engendered by mutual combat"); 720 ILCS 5/9-2(a) (West 2012) (a "mitigating factor" for second-degree murder occurs if defendant is "acting under a sudden and intense passion resulting from serious provocation by the individual killed *** but he or she negligently or accidentally causes the death of the individual killed").

¶ 39    With respect to defendant's document, the trial court observed on December 6, 2013: "First whether or not it's properly filed here that's the first issue. If it's not properly filed, I'll strike the motion. Are you able to tell me if it's properly filed? It's not a [section 2-]1401 petition." The trial court also stated: "This Court loses jurisdiction *** [a]fter the appeal is concluded. Then there's other remedies [section 2-]1401 remedies, post-conviction remedies and so it would come back to the original court. This could just be a guy that's busy typing from jail while he's being represented by the Appellate Defender's Office." The trial court then struck defendant's document in a written order, filed December 6, 2013, which stated in full:

> "It is hereby ordered that the defendant's 'Motion to Vacate Conviction/Sentence as Void' is not properly filed.
>
> This matter is currently pending before the Appellate Court under case number 13-535.
>
> The defendant's motion is stricken."

It is this order which is the subject of the current appeal.

¶ 40    On April 29, 2014, this court entered an order allowing defendant's late notice of appeal and appointing the State Appellate Defender to represent him. On May 9, 2014, the trial court also entered an order appointing the State Appellate Defender, and this appeal now follows.

¶ 41                                    ANALYSIS

¶ 42    On this appeal, defendant characterizes his "Motion to Vacate Conviction/Sentence as Void" as a section 2-1401 petition (735 ILCS 5/2-1401(a) (West 2012)), but concedes that he "chose the incorrect vehicle to present his claims" and that "a circuit court is not required to construe a collateral petition arguing constitutional violations as a post-conviction petition if the pleading does not explicitly invoke the [Post-Conviction Hearing] Act, as is the case here." In addition, defendant also observes that this court recently rejected his underlying substantive argument. *Sharp*, 2015 IL App (1st) 130438, ¶¶ 79-80.

¶ 43    For the following reasons, we do not find defendant's arguments persuasive.

¶ 44                                I. Standard of Review

¶ 45    Defendant argues that our standard of review is *de novo* and cites in support *People v. Vincent*, 226 Ill. 2d 1 (2007). In *Vincent*, our supreme court held that, in section 2-1401 proceedings, where a trial court enters either judgment on the pleadings or a dismissal for failure to state a cause of action, the proper standard of review is *de novo*. *Vincent*, 226 Ill. 2d at 15-17. Without conceding that defendant's document was a section 2-1401 petition, the State agrees that the issue before us is a question of law subject to *de novo* review.

¶ 46    However, defendant also argues that the trial court had the discretion to treat his document as a postconviction petition even though it did not invoke the Post-Conviction Hearing Act (Act), and that the trial court should have done so. 725 ILCS 5/122-1(d) (West 2012) (a trial court "need not evaluate" under the Act a document which fails to specify the Act); *People v. Shellstrom*, 216 Ill. 2d 45, 53 (2005) ("where a *pro se* pleading alleges a deprivation of rights cognizable in a postconviction proceeding, a trial court may treat the pleading as a postconviction petition, even where the pleading is labeled differently"). This argument suggests an abuse-of-discretion review.

¶ 47 However, whether we applied a *de novo* or an abuse-of-discretion standard of review, our conclusion would be the same.

¶ 48                                        II. Section 2-1401

¶ 49 On appeal, defendant characterizes his filing as a section 2-1401 petition.

¶ 50 Section 2-1401 permits relief from final judgments, which are older than 30 days but were entered less than 2 years ago. 735 ILCS 5/2-1401(a), (c) (West 2012); *People v. Laugharn*, 233 Ill. 2d 318, 322 (2009). "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). "[A]n action brought under section 2-1401 is a civil proceeding and, according to this court's long-standing precedent, is subject to the usual rules of civil practice, even when it is used to challenge a criminal conviction or sentence." *Vincent*, 226 Ill. 2d at 6.

¶ 51                                        III. Incorrect Vehicle

¶ 52 In defendant's brief to this court, he acknowledges: "It is true that [defendant] chose the incorrect vehicle to present his claims ***." Defendant explains that his "petition for relief from judgment and supporting documentation challenged appellate counsel's performance for failing to raise a jury instruction claim, but this ineffectiveness claim, based upon the federal and Illinois constitutions, was only cognizable pursuant to the Post-Conviction Hearing Act (the Act)" (725 ILCS 5/122-1(a)(1) (West 2012) (providing prisoners with a process to challenge "a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois" in the proceedings which resulted in his or her conviction)). Nonetheless, defendant argues that, "while a circuit court is not required to construe a collateral petition alleging constitutional violations as a post-conviction petition if the pleading does not explicitly invoke the Act, as is the case here, it is within a court's discretion to do so."

¶ 53 Section 122-1(d) of the Act provides in full:

"(d) A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section *need not evaluate* the petition to determine whether it could otherwise have stated some grounds for relief under this Article." (Emphasis added.) 725 ILCS 5/122-1(d) (West 2012).

¶ 54 Although a trial court "need not evaluate" a mislabeled petition, our supreme court has held that it may. In *Shellstrom*, cited by defendant, our supreme court held: "where a *pro se* pleading alleges a deprivation of rights cognizable in a postconviction proceeding, a trial court may treat the pleading as a postconviction petition, even where the pleading is labeled differently." *Shellstrom*, 216 Ill. 2d at 53.

¶ 55 In a footnote, the *Shellstrom* court further explained, that "while a trial court *may* treat a *pro se* pleading as a postconviction petition, there is no *requirement* that the court do so."

(Emphases in original.) *Shellstrom*, 216 Ill. 2d at 53 n.1. The supreme court then quoted subsection (d) and stated:

> "In other words, if a *pro se* pleading alleges constitutional deprivations that are cognizable under the Act, but, as in the case at bar, the pleading makes no mention of the Act, a trial court is under no obligation to treat the pleading as a postconviction petition. Nevertheless, as our appellate court has pointed out, this does not mean that a trial court is *barred* from treating a *pro se* pleading as a postconviction petition. 'If the court *need not* do so, then, by the strongest of implications, it also *may* do so.' (Emphases in original.) *People v. Helgesen*, 347 Ill. App. 3d 672, 676 (2004)." (Emphases in original.) *Shellstrom*, 216 Ill. 2d at 53 n.1.

¶ 56  Our supreme court then noted the adverse consequences that could flow to the defendant from the trial court's recharacterization and held that, in the future, when a circuit court recharacterizes as a postconviction petition a pleading that a *pro se* litigant has labeled differently, "the circuit court must (1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." *Shellstrom*, 216 Ill. 2d at 57.

¶ 57  In the case at bar, we cannot find that the trial court erred by not recharacterizing defendant's document, which set forth only one claim, as a successive postconviction petition, in light of the consequences to defendant that such a recharacterization would have.

¶ 58  Our conclusion is bolstered by the fact that this court recently rejected an argument similar to the underlying substantive argument made by defendant. *Sharp*, 2015 IL App (1st) 130438, ¶¶ 79-80 (no error in modified attempted first-degree murder instruction, which included the 25-to-life personal discharge sentencing enhancement for proximately causing great bodily harm). In his brief, defendant acknowledges: "It is true that one panel of the First District Appellate Court recently rejected a similar argument." However, defendant argues that the very fact that "such a challenge was raised" shows that his claim was not meritless. On the contrary, the fact that this court rejected the claim does not show its merit.

¶ 59                                    CONCLUSION

¶ 60  For the foregoing reasons, we cannot find any error in the trial court's striking of the document which defendant labeled a "Motion to Vacate Conviction/Sentence as Void."

¶ 61  Affirmed.