THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PASQUALE FORTE *et al.* Plaintiffs in Error.

*Opinion filed October 27, 1915.*

1. CRIMINAL LAW—*right of self-defense extends to the killing, by a brother, of assailant of his sister.* The right of self-defense extends to the killing, by a brother, of an assailant of his sister, where the circumstances are such that the sister would have been justified in killing her assailant in her own defense.

2. SAME—*when it is error to give instructions stating correct rules of law.* Giving instructions stating correct abstract rules of law is not error if they can be fairly applied to the facts in the case, but it is error to give such instructions if they are liable, under the facts, to mislead the jury.

3. SAME—*when right of self-defense revives.* Even though a young girl, by firing a revolver at her tormentor across the street, may be regarded as being the assailant, yet if she abandons her purpose and flees for safety toward her home but is overtaken by her tormentor, who throws her down and proceeds to choke her, then her right to exercise self-defense revives, and if her brother finds her in apparent danger of losing her life or sustaining great bodily injury at the hands of her tormentor, he has the same right to defend his sister that he would have had had her tormentor been the original assailant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding.

FRANCIS BORRELLI, for plaintiffs in error,

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE P. RAMSEY, (STEPHEN A. MALATO, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, Pasquale Forte and Anna Forte, were indicted with their mother, Pasqualina Forte, for the murder of Anthony Morasco on April 29, 1913, in the city of Chicago. Upon a trial in the criminal court of Cook county the jury found the defendant Pasquale Forte guilty of murder and his punishment was fixed at imprisonment in the penitentiary fourteen years. The defendant Anna Forte was found guilty of manslaughter, and the jury fixed her punishment at imprisonment in the penitentiary but found that she was within the ages of ten and twenty-one years and about the age of seventeen years. Motions for a new trial were made and were overruled as to Pasquale Forte and Anna Forte and the motion as to Pasqualina Forte was continued. A motion in arrest of judgment was made and overruled, and the court sentenced Pasquale Forte to imprisonment in the penitentiary at Joliet for fourteen years and sentenced Anna Forte to a term of imprisonment in the State Home for Female Offenders at Geneva.

There had been trouble between the defendants and Morasco before the fatal encounter. In August, 1912, the defendant Anna Forte, who was fifteen years old, became engaged to be married to Morasco, who was about twenty-five years of age. Because of alleged improper conduct of Morasco toward her and because of his coming to the house in an intoxicated condition she broke off the engagement in February, 1913. During the engagement he had deposited small sums of money, amounting to $79, with her father, and that money was returned to him and he was advised to deposit it in the Schiavone Bank. Morasco was angry at the breaking of the engagement and came to the house

at 930 Hope street, in Chicago, where Anna lived with her family, and was insulting and made threats that if he saw Anna he would cut her face. The father met Morasco at the house of a neighbor by request, and Morasco gave him some things he said he had bought for Anna and wanted him to pay back the money they had cost, and the father gave him the money, which was about $1.50. About three weeks before the homicide Morasco was in front of the Forte home, singing what witnesses called dirty songs, of such a character that a neighbor closed his window. After that, Anna, who was employed in a beads factory, was going to her work one morning when Morasco came after her with a razor in his hand. She ran away from him into a woman's store on Taylor street and then went home and told her people what had occurred and did not go to work. She and her mother, Pasqualina Forte, went to the house of an Italian police officer and made complaint about Morasco's annoying her and asked the officer to arrest him. Nothing was done, however, and on April 24 Pasqualina Forte, with Anna and the younger sister, Caroline, were going along the street toward Blue Island avenue when Morasco ran after them, gave the mother, who was then far advanced in a delicate condition, three or four blows and knocked her down, kicked the little girl, Caroline, on the knee, and knocked Anna down and made her nose bleed. The next day the mother, Pasqualina Forte, went to the Maxwell police station of the municipal court and made a complaint, under oath, for the assault upon her and a warrant was issued for Morasco's arrest. The return of the officer on the warrant was dated April 29 but the arrest was on the evening of the 28th, and on that evening he was in front of the Forte home making a noise and talking dirty. When arrested he gave bail in the sum of $50, and the homicide occurred the next morning.

The homicide was witnessed by six disinterested persons, three of whom testified on the part of the People and

three testified on behalf of the defendants, and the defendants were also witnesses. There was no material difference in the accounts given by the different witnesses of what occurred and their testimony corresponded with evidence given at the coroner's inquest which was introduced on the trial. It was about 6:30 o'clock in the morning of April 29 when Pasqualina Forte came out of the house at 930 Hope street to get a bottle of milk for breakfast. Morasco was standing directly across the street, in front of 931 Hope street, looking at the house, and she asked him what he was looking at. He said he was looking at her, and she asked him why he did not go home and go about his business. Morasco said that she had him arrested the night before and he got out on $50 bond, and before he would go away she would have to give him $1000 or he would make them sell their house for rags. He came across the street to the north side and stood under the porch of the Forte house when he said that, and she said she did not owe him any money and he should go away about his business and leave them alone. She then went inside of the house and came out with a revolver, and Morasco was then across the street southwest of her. She fired four or five shots, and but one bullet, which struck a bystander but apparently did no harm, was accounted for. When the firing commenced Morasco ran behind a wagon standing in the street. Anna Forte was in the house, and hearing the shooting took a little revolver and ran out on the street and fired one shot. Morasco started toward her, calling her a sow or an epithet much worse, and she ran toward the house, screaming and crying for help. Morasco caught up with Anna when she reached the sidewalk or was part way up the steps, and caught her by the hair and knocked her head against the house two or three times and then threw her down on the sidewalk on her face and choked her. He had his knees on her back and his hands around her throat and was choking her and bumping her on the

sidewalk.   The mother, Pasqualina Forte, attempted to res-
cue Anna and was striking Morasco with the butt end of
her revolver.   She was a small woman, four feet ten inches
in height, and Morasco was about five feet eight inches and
weighed about 160 pounds.   The younger daughter began
screaming and calling for her brother, the defendant Pas-
quale Forte.   He was in the house and had been operated
on for hernia and had not entirely recovered.   He was
awakened by the screaming of the little girl, who called
him to hurry,—that Tony was killing Anna.   He came out,
dressed in his undershirt, trousers and stockings, and had
a hatchet or hand-ax in his hand.   As he came out Morasco
had his knees on Anna's back and his hands around her
neck, and the mother was either on top of Morasco, or,
as one witness thought, one of her legs was under him
and she was trying to pull him off.   Pasquale pushed his
mother out of the way and struck Morasco four times in
immediate succession,—once on the hip and the other blows
on the head,—causing his death.   Anna's elbows were both
skinned in places covering each elbow two or three inches
in diameter, and there were bruises on each forearm, a
scratch on her neck and a bruise on one side of her neck,
and the comb that had been in her hair and the beads that
had been around her neck were scattered over the sidewalk.

By what process of reasoning the jury reached the ver-
dict returned it is difficult to understand.   It could not have
been by the application of correct rules of law to the evi-
dence.   It is true that when Anna heard the shooting and
ran out of the house she fired a shot from her revolver,
but in view of what had occurred she was necessarily in a
state of great excitement.   Morasco had followed her with
a razor after having threatened to cut her face, and only
a few days before her mother had been assaulted and
knocked down by him and she and her little sister had also
been assaulted.   She did not make a deliberate assault up-
on Morasco, and when he started across the street toward

her, calling her a vile name, she ran away, frightened and screaming. While she was trying to escape Morasco pursued her, caught her by the hair, knocked her head against the house, threw her down on the sidewalk, skinned her elbows and bruised and choked her. She was only trying to escape from him and to save her own life or save herself from great bodily harm, and had nothing to do with the killing, either by word or act. Morasco was killed by Pasquale Forte, who was called to rescue his sister Anna by the screaming of the little girl, Caroline, who shouted that Tony was killing Anna. He came out and found Morasco on his sister's back on the sidewalk, choking her, and his mother trying to save his sister. No one can doubt that the situation presented to him was that his sister was in imminent danger of losing her life or suffering great bodily injury, or that there was apparent necessity of killing Morasco in order to save her from such death or bodily harm. The killing was done in good faith under an honest and reasonable belief that it was necessary to prevent Morasco's apparent purpose, and as Anna was helpless, lying on her face under Morasco and being choked by him, she could not have appeared to Pasquale as an aggressor. The right of self-defense extends to the killing, by a brother, of an assailant of his sister,—at least provided the circumstances are such that the sister would have been justified or excused in killing her assailant in her own defense,—and that Anna would have been so justified is free from any sort of doubt. Whatever limitations there may be of the right of self-defense when exercised by one member of a family for the protection of another, the act of Pasquale Forte was within such limitations. If Pasquale Forte could do no more than his sister might lawfully have done for herself, he was justified, under the doctrine of self-defense, in what he did.

Perhaps the jury were misled by the instructions. The object of instructions is to give to the jury rules of law

applicable to the evidence so that the jury may apply such rules to the facts of the case. Having determined the facts from the evidence, instructions are designed to enable the jury to apply proper legal principles so as to reach a verdict in accordance with the law and the evidence, and it is not proper for the court to expound even correct rules of law in the form of instructions which the jury cannot make use of in deciding the case. (*City of Taylorville* v. *Stafford*, 196 Ill. 288.) The court gave nineteen instructions at the instance of the People, most of them ready-made and abstract in form, to fit every case where one of the parties to a conflict kills the other.. While it is not error to give such abstract rules of law if they can fairly be applied to the facts of the case, it is error to give such instructions which are liable to mislead the jury. An example of the instructions given is numbered 14, as follows:

"The court instructs the jury that it is the law in this State that if a person kill another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm the killing of the other was apparently absolutely necessary; and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

The instruction did not apply to Anna Forte, who was in the dangerous situation contemplated by the instruction, for she did not kill Morasco or participate in the killing in any way. It had no relation to Pasquale Forte, who did the killing, because there was no danger to him and it could not have appeared to him that it was absolutely necessary to kill Morasco in order to save his own life or to prevent his receiving great bodily harm. If the jury took that and similar instructions as a literal guide, the defendant who killed Morasco was not justified in doing it. Taking the evidence in the most favorable light for the People,

if it can be fairly assumed that Anna was an assailant when she ran out of the house and fired the shot, there was no room for doubt that she abandoned the contest when she took flight to her own home and was pursued and attacked by Morasco.

The court gave an instruction, numbered 13, at the request of the defendants, which was fairly applicable to the evidence, as follows:

"The jury are instructed that although you may believe, from the evidence, that the defendant Anna Forte commenced the fight in question and made the first attack upon the deceased, still if the jury further believe, from the evidence, that the defendant Anna Forte afterwards, and before the fatal blows were struck by the defendant Pasquale Forte, in good faith abandoned the fight, then the right of the deceased to employ force against the defendant Anna Forte ceased, and if the deceased did not then desist from attempting to use violence towards the defendant Anna Forte, then the defendant's right to defend herself revived; and if the defendant Pasquale Forte then found his sister Anna Forte in apparent danger of losing her life or of sustaining great bodily injury at the hands of the deceased, he would have the same right to defend Anna Forte that he would have had if Anna Forte had not originally commenced the conflict."

If the jury concluded that Anna Forte commenced the fight and made the first attack upon Morasco, yet there could be no doubt that she abandoned any intention of continuing it when she ran away from Morasco and sought safety in her own home. The verdict was in direct conflict with this instruction as well as with the evidence of the case.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*