(No. 73399.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MANUEL SALAZAR, Appellant.

*Opinion filed September 22, 1994.—Rehearing denied December 5, 1994.*

514

BILANDIC, C.J., joined by HEIPLE, J., specially concurring.
MILLER, J., dissenting.

Charles Schiedel, Deputy Defender, and Charles Hoffman, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago (Marlene Kamish, of Chicago, and Eliot L. Grossman, of Los Angeles, California, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and James Glasgow, State's Attorney, of Joliet (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen, Arleen C. Anderson and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant, Manuel Salazar, was found guilty of murdering an on-duty police officer. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (b)(1).) The jury found that the defendant should be sentenced to death for this offense (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(d)) and the trial court entered conviction and sentence in accordance with the jury's findings. On appeal, this court affirmed the defendant's conviction and sentence (*People v. Salazar* (1988), 126 Ill. 2d 424). Defendant filed a petition for post-conviction relief alleging ineffective assistance of counsel. (725 ILCS 5/122—1 *et seq.* (West 1992).) Following an evidentiary hearing, the trial court denied defendant's request for post-conviction relief. Defendant appeals. 134 Ill. 2d R. 651(a).

BACKGROUND

Defendant was prosecuted and convicted for the shooting death of Officer Martin Murrin that occurred on September 12, 1984, while the officer was allegedly attempting to arrest defendant on an outstanding felony warrant. Defendant's defense at trial was that he shot the police officer in self-defense. This court's previous opinion contains a detailed statement of the evidence presented at defendant's trial. (See *Salazar*, 126 Ill. 2d at 435-49.) We restate the evidence only to the extent necessary to resolve the issues presented in this appeal from the dismissal of defendant's post-conviction petition.

Evidence presented at defendant's trial showed that shortly before the date of the incident, Officer Murrin had seen a flyer indicating the defendant was "wanted" on an outstanding felony arrest warrant and that Officer Murrin told his partner that he "was going to find defendant." (*Salazar*, 126 Ill. 2d at 436.) As Officer Murrin and his partner were patrolling the vicinity in a marked police car, they passed a vehicle in which defendant was a passenger. They pursued the automobile, the car slowed, and defendant ran out of the car. Officer Murrin followed defendant on foot, with his gun drawn. See *Salazar*, 126 Ill. 2d at 435-36.

When defendant ran from the officer, defendant was carrying a gym bag. Witnesses testified that they saw the officer follow the defendant into an alleyway. Shortly thereafter, they heard shots fired. Officer Murrin's partner found Officer Murrin in the alley. The officer had been shot five times. William Pitts testified that he saw Officer Murrin follow the defendant and heard the officer say to defendant, "Stop fighting, ***. I got you. You are under arrest." (*Salazar*, 126 Ill. 2d at 436-37.) Pitts testified that he then heard gunshots. Officer Robert Brenczewski, who had interviewed witnesses following the shooting, testified at defendant's trial. Officer Brenczewski testified that when he interviewed Pitts after the incident, Pitts informed the officer that Pitts "heard a type of talking which he could not make out." *Salazar*, 126 Ill. 2d at 437.

Defendant testified at his trial that he shot Officer Murrin in self-defense. According to his trial testimony, defendant ran into the alley and heard someone shout "Freeze." Defendant stated that he looked behind him and saw Officer Murrin. Defendant continued to run because he wanted to dispose of the gun in his gym bag. Defendant testified that he ran into an alley that was a dead-end, threw the gym bag away, and raised his hands

above his head. Defendant stated that Officer Murrin came up to the defendant and hit the defendant several times, causing defendant to fall to the ground. The officer then knelt on top of him and continued to hit the defendant several more times. Defendant stated that he told the officer several times, "I give. I give." However, Officer Murrin continued to hit the defendant. The defendant testified that he either pushed or punched the officer and the officer reached for his revolver. Defendant stated that he also reached for Officer Murrin's weapon. Defendant testified that they continued to struggle until the defendant fell backward. Defendant stated that the gun fired repeatedly when he fell. He testified that he ran away, jumped over a fence, and threw away the officer's revolver. See *Salazar*, 126 Ill. 2d at 448.

Following the incident, police officers discovered defendant's gym bag near the scene. In the bag, the officers found various items including a pair of brass knuckles, a Smith and Wesson 9 millimeter semiautomatic gun, and two bullet clips. (See *Salazar*, 126 Ill. 2d at 441.) Tests revealed that Officer Murrin's "left hand was on or near the muzzle of a firearm when it discharged" and that his "right hand could have been on or near as it was discharged." (*Salazar*, 126 Ill. 2d at 440-41.) Forensic evidence indicated that the officer had suffered injuries "consistent with blunt trauma" including "abrasions or scrapes as well as bruising on the skin." *Salazar*, 126 Ill. 2d at 442.

After the shooting, defendant ran from the scene to the home of the parents of Pedro Palacios, a friend of defendant, who lived nearby. Pedro testified that he encountered the defendant in the garage while defendant was putting on the clothes belonging to one of Pedro's brothers. Pedro stated at trial that he saw that "defendant's face was 'puffed up' on the right side" and

that he had "a problem recognizing defendant at first." (*Salazar*, 126 Ill. 2d at 438.) Pedro also stated that defendant told them that defendant had been chased by a police officer, and that although he had tried to surrender, the officer continued to hit defendant repeatedly. Pedro testified that the defendant said that when he could no longer tolerate the beating, he reached for the officer's gun and shot the officer.

The jury found defendant guilty of murder in the shooting death of Officer Murrin. The jury further determined that there was no mitigating evidence sufficient to preclude imposition of the death penalty. Defendant's conviction and sentence were affirmed on direct appeal (see *Salazar*, 126 Ill. 2d 424).

In his petition for post-conviction relief, defendant alleged, *inter alia*, that his appellate counsel was ineffective for failing to raise certain arguments during defendant's direct appeal. Following an evidentiary hearing, the trial court denied defendant's post-conviction petition. He appeals to this court. 134 Ill. 2d R. 651(a).

## ANALYSIS

The defendant's first argument in support of his post-conviction petition relies on this court's decision in *People v. Reddick* (1988), 123 Ill. 2d 184. In *Reddick*, this court held that the Illinois pattern jury instructions regarding murder and voluntary manslaughter, used by the trial court at the *Reddick* defendants' trials, incorrectly advised the jury that it was the State's burden to *prove* one of the mitigating mental states that would reduce murder to voluntary manslaughter. This court determined that the instructions should have told the jury that it was the State's burden to *disprove* the pertinent mitigating mental states. (*Reddick*, 123 Ill. 2d at 193-97; see also *People v. Shields* (1991), 143 Ill. 2d 435, 442.) In *Reddick*, this court explained the improper

effect of the erroneous jury instructions on the jury's determination of the defendants' guilt:

"The voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the People must prove the existence of one of the alternative mitigating mental conditions which the People contend did not exist. By contrast, the murder instruction makes no mention of the mitigating mental conditions. These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it will have been proved by the defendant, not the People." *Reddick*, 123 Ill..2d at 194-95.

The jury instructions utilized by the trial court in the present case were the same as those found defective in *Reddick*. Notwithstanding this *Reddick* error, the State contends that the defendant is not entitled to post-conviction relief because any *Reddick* defect in the instructions used at defendant's jury trial was not of constitutional proportion. According to the State, a *Reddick* error in jury instructions does not amount to a violation of constitutional due process. To support this argument, the State relies on *Gilmore v. Taylor* (1993), 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112.

We need not address the question of whether *Reddick* error is a constitutional violation in order to determine whether defendant is entitled to post-conviction relief. Defendant argues that because the jury instructions given in his trial violated the directives of *Reddick*, the defendant should receive a new trial. Defendant presents this argument in a petition for post-conviction relief. According to precedent of this court, an action filed under the Post-Conviction Hearing Act is a collateral attack on the defendant's conviction and sentence, not an appeal from that conviction and sentence. (*People v. Ruiz* (1989), 132 Ill. 2d 1, 9.) The purpose of a post-conviction proceeding is to consider

constitutional arguments that the defendant did not raise, and could not have raised, in his direct appeal. (*People v. Hall* (1993), 157 Ill. 2d 324, 330; *People v. Owens* (1989), 129 Ill. 2d 303, 307-08.) The record shows that this court's decision in *Reddick* was filed while defendant's direct appeal was pending before this court. As a result, defendant could have raised a *Reddick* argument in his direct appeal from his conviction and sentence. See *Shields*, 143 Ill. 2d at 445.

Generally, the defendant's missed opportunity to raise the *Reddick* issue in his direct appeal could preclude this court's consideration of his *Reddick* argument in this post-conviction proceeding. However, defendant's *Reddick* argument is based upon an allegation that defendant was deprived of the effective assistance of counsel. This court has noted that it is appropriate, in a post-conviction proceeding, to address the merits of a defendant's claim that his appellate attorney was ineffective for failing to present certain arguments during the defendant's direct appeal. (*E.g., People v. Stewart* (1990), 141 Ill. 2d 107.) For example, in *People v. Ruiz* (1989), 132 Ill. 2d 1, this court observed:

> "An action for post-conviction relief represents a collateral attack on a prior judgment; it is not an appeal from the underlying conviction and sentence. [Citations.] To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of Federal or State constitutional rights in the proceedings that produced the judgment under attack [citation]. Rulings on issues that were previously raised at trial and on direct appeal are *res judicata*, and issues that could have been raised in the original proceedings, but were not, will be deemed waived. [Citation.]
>
> The primary constitutional claim undergirding the defendant's arguments for post-conviction relief is that he was denied the effective assistance of counsel both at trial and on direct appeal. *** The State responds that several of the issues pertaining to trial counsel's representation

must be deemed waived because they were matters of record and therefore could have been raised on direct appeal. We have previously held, however, that counsel cannot be expected to argue his own incompetency [citation], and such a rule would be applicable here, where trial counsel hired the attorney who handled the appeal. Moreover, we note that the defendant has made the additional allegation that appellate counsel was ineffective for failing to raise the matters on direct appeal. The alleged ineffectiveness of appellate counsel will not operate as a bar to consideration of those issues. [Citation.]" *Ruiz*, 132 Ill. 2d at 9-10.

In light of this precedent, we will consider defendant's *Reddick* argument in the context of defendant's assertion that his appellate counsel, who was also his trial attorney, was ineffective because the attorney failed to argue, in defendant's direct appeal from his conviction, that there was reversible error in the jury instructions under this court's pronouncements in *Reddick*, 123 Ill. 2d 184. Generally, ineffective assistance of counsel is found where the attorney's representation fell below an objectively reasonable standard of competence and where the deficiencies in counsel's representation prejudiced the defendant's defense at trial such that the defendant was deprived of a fundamentally fair trial. See, *e.g.*, *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Caballero* (1989), 126 Ill. 2d 248, 269-70.

As previously noted, it is undisputed in the present appeal that the jury instructions concerning murder and voluntary manslaughter given at defendant's trial were in violation of *Reddick*. The court's decision in *Reddick* was announced while defendant's direct appeal was pending before this court. Five months elapsed between the date on which the *Reddick* decision was filed and the announcement of the decision in defendant's direct appeal from his conviction and sentence. During this period, defendant's attorney did not file a motion

requesting this court to consider whether there had been *Reddick* error at defendant's trial. At the hearing on defendant's post-conviction petition, defendant's appellate counsel could not account for or explain his failure to bring to this court's attention an allegation that *Reddick* error had occurred during defendant's trial. We conclude that the defendant's attorney was ineffective for his failure to raise a *Reddick* argument during defendant's direct appeal. See, *e.g.*, *People v. Logan* (1991), 224 Ill. App. 3d 735 (appellate counsel's failure to raise meritorious issue on appeal deprived defendant of effective assistance of counsel).

Having determined that defendant was deprived of the effective assistance of counsel when his attorney failed to argue *Reddick* on direct appeal from defendant's criminal conviction, we turn to a determination of whether defendant should receive a new trial. A defendant is not automatically entitled to a new trial whenever there has been a *Reddick* violation, and an infraction of *Reddick* is not *per se* reversible error. In order to be awarded a new trial because of *Reddick* error, the defendant must show that his defense was prejudiced by the failure to follow *Reddick* at trial. (See, *e.g.*, *People v. Shields* (1991), 143 Ill. 2d 435, 445.) The State contends that defendant was not prejudiced by his attorney's failure to raise the *Reddick* issue on direct appeal. The State argues that, because the evidence against the defendant was overwhelming, the failure of defendant's appellate counsel to raise a *Reddick* issue with respect to the jury instructions in the instant cause was harmless error beyond a reasonable doubt.

To support this argument, the State relies upon certain statements set forth in this court's opinion in defendant's direct appeal. Specifically, this court stated that the "defendant \*\*\* was also a forcible felon at the time of the instant offense [and therefore] cannot claim

a qualified right to meet excessive force with deadly force and it is defendant who must suffer the legal consequences of his choice to kill." (*Salazar*, 126 Ill. 2d at 467.) The State claims that in this quoted comment, this court "found that as a matter of law, defendant, a fleeing felon, was not entitled to assert self-defense." We disagree.

The statement appearing in this court's opinion, quoted by the State, appears in a paragraph in which this court found that the trial court did not abuse its discretion when it gave the jury certain nonpattern jury instructions. The trial court's instructions had advised the jury, in pertinent part, that if the jury found the defendant attacked the officer while he was attempting to evade arrest, the jury could reasonably conclude that the defendant was a fleeing felon, who could not claim a right to use deadly force in his own defense. Thus, the remarks of this court upon which the State now relies were made in reference to the propriety of instructions to guide the jury in the event that the jury found that the defendant was a fleeing felon at the time of the incident. See *Salazar*, 126 Ill. 2d at 465-67.

However, if the defendant terminated his efforts to escape and surrendered to the officer, then defendant was no longer a *fleeing* felon attempting to elude arrest by the police officer. The comments made by this court in defendant's direct appeal did not refer to the appropriate instructions to be applied by the jury in its determination of whether the defendant was or was not a fleeing felon at the time of the homicide. If the jury accepted the defendant's claim that he had surrendered to Officer Murrin, that thereafter the officer began to assault the defendant, and that the defendant believed, albeit unreasonably, that the force he used in defending himself was necessary to prevent his imminent death or great bodily harm to himself, the jury could have found

the defendant guilty of voluntary manslaughter. (See generally *People v. McGraw* (1958), 13 Ill. 2d 249; *People v. Doody* (1931), 343 Ill. 194; *People v. Forte* (1915), 269 Ill. 505, 512; *People v. Smith* (1993), 242 Ill. App. 3d 344, 347-48; *People v. Lyda* (1989), 190 Ill. App. 3d 540, 545; *People v. Veatch* (1986), 145 Ill. App. 3d 23, 29; *People v. Bailey* (1982), 108 Ill. App. 3d 392, 398; *People v. Fort* (1970), 119 Ill. App. 2d 350, 355; 720 ILCS Ann. 5/7—7, Committee Comments—1961, at 362 (Smith-Hurd 1993).) Consequently, this court's comments in defendant's direct appeal did not find, as a matter of law, that the defendant was a forcible felon who was fleeing arrest at the time of the offense, nor did those comments foreclose the giving of jury instructions on voluntary manslaughter.

The State contends that the evidence presented at defendant's jury trial showed the defendant was not justified in shooting Officer Murrin, because the defendant was attempting to escape arrest when the defendant began to attack the officer. However, our review of the record reveals evidence which could have persuaded a properly instructed jury to find that the defendant had terminated his efforts to escape or avoid arrest by the officer, and that the defendant believed, perhaps unreasonably, that Officer Murrin was going to shoot him. Defendant's trial testimony indicated that the defendant shot the officer during the course of a struggle with the officer that started after the defendant attempted to surrender to the officer and the officer began to assault the defendant. Other evidence tended to corroborate defendant's version of the occurrence. For example, Pedro Palacios testified that when he saw defendant shortly after the incident, defendant's face was swollen and difficult to recognize. Pedro also stated at trial that defendant told him defendant had been chased by a police officer with whom defendant had a struggle. Accord-

ing to Pedro's trial testimony, defendant said that he shot the officer after defendant surrendered because the officer had beaten the defendant and defendant believed Officer Murrin was going to shoot him. Tests revealed that at least one of Officer Murrin's hands was on his revolver when it was discharged, and medical evidence showed that the officer had suffered injuries which indicated a recent struggle. Forensic evidence also indicated the shots were fired from very close range.

The State asserts that the defendant's version of the incident was "contradicted by the other evidence at trial in such a fashion as to render defendant's version that he acted in self-defense highly improbable." However, it was the province of the jury to determine whether defendant's explanation of the shooting was "highly improbable."

The State points out that defendant shot Officer Murrin five times at close range and that the officer suffered bruises and abrasions as a result of his struggle with defendant. As we determined in defendant's direct appeal from his conviction, the State's evidence, when coupled with all of the other evidence presented at trial, was sufficient for the jury to find, beyond a reasonable doubt, that the defendant was guilty of murder. (*Salazar*, 126 Ill. 2d at 435-54.) The determination of the defendant's guilt was made by the jury, however, not by this court upon review. In order to make that determination, the jury was entitled to accurate instructions that properly advised the jury of the State's burden consistent with *Reddick*. The jury instructions in the present case did not accurately advise the jury of the State's burden to disprove the defendant's affirmative defense in accordance with *Reddick*. The defendant's account of the incident, the testimony of other witnesses regarding the shooting, and the testimony regarding the physical condition of the defendant and Officer Murrin following

the altercation could have persuaded properly instructed jurors to conclude that defendant was guilty of voluntary manslaughter, rather than murder. Whether the defendant should be found guilty of murder or manslaughter must be resolved by a properly instructed jury at a new trial on remand of the present cause.

The State argues that it is significant the jury did not return verdicts on both voluntary manslaughter and murder, as did the jury in *People v. Mikell* (1991), 217 Ill. App. 3d 814. The State argues that it is also significant that the jury in the present cause imposed the death penalty for the defendant's murder conviction. We do not believe that the jury's failure to return inconsistent verdicts, or the jury's decision to impose the death penalty, demonstrates that the jury would have found the defendant guilty of murder even if the jury had been properly instructed under *Reddick*.

In light of this disposition, we need not and do not address the parties' remaining arguments with respect to defendant's request for post-conviction relief. For the reasons stated, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE BILANDIC, concurring:

The majority concludes that the defendant's conviction must be reversed and the cause remanded for a new trial because the defendant was deprived of the effective assistance of counsel when his attorney on direct appeal failed to challenge the voluntary manslaughter and murder instructions given at trial.

I concur with the majority's disposition of this appeal. I write separately for two reasons: first, to clarify the standard of review applicable in this appeal; and second, to distance myself from several statements in the majority opinion which, I believe, improperly

suggest that the defendant was somehow victimized by Officer Murrin.

As stated, the defendant claims that he was deprived of the effective assistance of counsel on direct appeal because his counsel failed to challenge on direct appeal, certain jury instructions that this court condemned in *People v. Reddick* (1988), 123 Ill. 2d 184. Claims of ineffective assistance of counsel are evaluated under the two-part standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under that standard, the defendant here must prove, first, that his counsel was incompetent in failing to raise the *Reddick* error, and second, that he suffered prejudice because of counsel's failure to raise the *Reddick* error on direct appeal.

I concur with the majority's finding that the defendant has satisfied the first prong of the *Strickland* standard. The real question in this appeal is whether the defendant has satisfied the second or "prejudice" prong of the *Strickland* standard. Under this prong, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) The defendant here claims that he was prejudiced by his attorney's failure to raise the *Reddick* error on direct appeal, because this court would have reversed his conviction and granted him a new trial if the error had been called to its attention.

In this regard, the majority appropriately notes that this court has specifically rejected the contention that every *Reddick* error necessitates an outright reversal of a defendant's conviction and remandment for a new trial. In *People v. Shields* (1991), 143 Ill. 2d 435, 445, this court stated:

"[W]e reject the defendants' contention that the *Reddick* court's description of the errors identified in that decision

as 'grave' (see *Reddick*, 123 Ill. 2d at 198) mandates automatic reversal of convictions arising from trials in which the defective jury instructions were used. *Reddick* itself counseled that the entire record must be examined in determining whether the jury was properly instructed. (*Reddick*, 123 Ill. 2d at 198.) Moreover, our subsequent decisions have recognized that the errors identified in *Reddick* may indeed be harmless in appropriate cases. See *People v. Austin* (1989), 133 Ill. 2d 118, 123-24; *People v. Harris* (1989), 132 Ill. 2d 366, 395."

Thus, under *Shields*, an instructional error that violates *Reddick* necessitates reversal of a defendant's conviction and the grant of a new trial only when the reviewing court determines, in light of *all of the evidence in the record*, that the improper instructions were not harmless error. *People v. Shields* (1991), 143 Ill. 2d 435.

The majority concludes that the improper jury instructions were not harmless error and that, therefore, the defendant was prejudiced by appellate counsel's failure to raise the *Reddick* error on direct appeal. While I concur with the majority's conclusion that the *Reddick* error was not harmless (and that the defendant was therefore prejudiced by appellate counsel's failure to raise the *Reddick* issue), I strongly disagree with the majority's misleading portrayal of the evidence produced at trial. In its analysis, the majority states that the "record reveals evidence which could have persuaded a properly instructed jury to find that the defendant had terminated his efforts to escape or avoid arrest by the officer, and that the defendant believed, perhaps unreasonably, that Officer Murrin was going to shoot him." (162 Ill. 2d at 524.) The majority opinion then goes on to present a one-sided view of the evidence introduced at trial, relying almost exclusively upon the defendant's own trial testimony. Upon reading the majority opinion, one is left with the impression that the defendant initially fled the officer but then experienced a sudden change of heart, stopped on his own initiative, surren-

dered, and was thereupon severely beaten by Officer Murrin, feared for his life, and then shot and killed the officer, believing such force was necessary and justified.

For the record, I wish to point out that the evidence produced at trial and thoroughly discussed by this court in its opinion on direct appeal presents an entirely different picture of the incident in question. (See *People v. Salazar* (1988), 126 Ill. 2d 424.) In fact, the evidence established that at the time of the shooting, the defendant had a strong motive to elude arrest, as there was an outstanding warrant for his arrest, charging him with aggravated battery, a felony. The evidence also suggested that the defendant knew of the outstanding warrant, because the defendant had made plans prior to the shooting to leave the country and flee to Mexico. The evidence also established that the defendant was trained in both boxing and in martial arts.

The evidence at trial established that the victim, Officer Murrin, was shot with his own gun. The State introduced the testimony of a witness who saw Officer Murrin chasing the defendant and overheard the scuffle between the defendant and the officer. The witness testified that he saw a young Hispanic man running down the alley with a police officer in pursuit. The police officer was carrying a gun in his right hand. A few seconds later, he heard someone say, "Stop fighting, damn it. I got you. You are under arrest." The witness then heard three quick gunshots followed by a pause and two more gunshots. The witness then saw the defendant vault a fence while holding the gun in his right hand, and then come back over the fence without the gun. The witness testified that the defendant's face did not have any unusual markings, bruises or blood on it.

A neutron activation analysis revealed that Officer Murrin's left hand was on or near the muzzle of the gun when it discharged and that the officer's right hand could have been on or near the gun when it discharged.

The victim's partner, Officer Ponce, testified that he heard five gunshots and then saw the defendant in the rear of a residence holding a gun at a 45-degree angle. Ponce yelled, "Halt, police." The defendant looked over his right shoulder and then ran off. Ponce observed that the defendant did not have any debris or blood on him and did not observe anything unusual about the right side of the defendant's face.

An autopsy revealed that the victim had fresh bruises and abrasions on his right upper lip, a prominent scratch behind the right ear, scrapes and scratches on his left upper arm, on the back of his left arm and on his left forearm. The victim also had abrasions on the right upper arm, on the back of the right elbow, and on the front and back of his neck. Scratches were also found on the victim's right knee and the back of the left knee.

The autopsy also revealed that the victim had been shot five times: three times in the chest, once in the right ear and once in the center of his forehead. A forensic pathologist testified that the chest wounds were probably inflicted first because they produced a great deal of internal bleeding. The wound in the center of the forehead was inflicted later, because it was instantaneously fatal and would have prohibited the victim from producing significant internal bleeding. A forensic scientist testified that two of the chest wounds were inflicted from a distance of less than one inch, while the third chest wound was caused by a gunshot fired four to six feet from the victim.

This court, on direct appeal, reviewed this evidence, along with the evidence discussed in the majority opinion. In affirming the defendant's murder conviction, this court found that the evidence established that the defendant did not surrender to Officer Murrin, but instead, initiated a struggle in an attempt to prevent his arrest. This court found that the evidence showed that

the defendant was the initial aggressor and the dominant figure in the struggle. This court also found that Officer Murrin received a beating in the struggle, while the defendant was left basically unscathed. (*Salazar*, 126 Ill. 2d at 451.) This court also noted that the defendant shot the officer, not once, but *five* times at close range, and then immediately fled the scene and, ultimately, the country. In light of this evidence, this court concluded that the "defendant did not act with any unreasonable belief that would justify his taking of the deceased's weapon and shooting the victim five times at very close range. *** Except for defendant's testimony, nothing in the record reveals that he acted in any other way but deliberately and intentionally to kill Officer Murrin." *Salazar*, 126 Ill. 2d at 453-54.

As one can see from the discussion of the trial evidence above, the majority's statement that the record reveals evidence that "could have persuaded" a properly instructed jury to find the defendant guilty of voluntary manslaughter is misleading and one-sided, especially when one considers that most of this evidence was the defendant's own trial testimony. While I find fault with the majority's presentation of the evidence, I do agree that the defendant in this case presented some evidence of an unreasonable belief that deadly force was necessary. Therefore, it cannot be said that the *Reddick* error was harmless beyond a reasonable doubt.

Although *Reddick* was decided in June 1988, five months prior to the decision in the original appeal in this case, defendant's appellate counsel did not cite *Reddick* in that appeal. *Reddick* was a significant opinion in the field of criminal law. Defendant's appellate counsel was not even aware of its existence. Had he been aware of *Reddick* and cited it, this court probably would have granted a new trial as it did in similar cases at that time. (See, *e.g.*, *Shields*, 143 Ill. 2d at 447, 449, 452

(reversal and remandment required where it is not clear beyond a reasonable doubt that *Reddick* error was harmless).) In addition, the prosecution remained silent on the *Reddick* issue and this court did not raise it *sua sponte*. All of these circumstances persuade me to give the defendant a new trial. The facts of this case, however, are unique. Our holding here is not intended to diminish in any way our holding in *Shields*. In order to prevail, a defendant still must establish that a *Reddick* error was not harmless error. *Shields*, 143 Ill. 2d at 445.

For the reasons stated, I concur with the judgment of the majority.

JUSTICE HEIPLE joins in this concurrence.

JUSTICE MILLER, dissenting:

Unlike the majority, I would not grant the defendant relief on his post-conviction claim regarding the jury instructions used at trial for the offenses of murder and voluntary manslaughter. The judge in the proceedings below properly rejected this argument following an evidentiary hearing on the allegations of the defendant's post-conviction petition, and I would uphold that determination.

Properly framed, the pertinent question in the present case is whether the defendant was denied the effective assistance of counsel by his attorney's failure to raise, on direct appeal before this court, any challenge to the jury instructions used in this capital case to instruct the jury on murder and voluntary manslaughter. The same attorney represented the defendant both at trial and on appeal; he was assisted by a different attorney each time. While the defendant's direct appeal was pending before this court, this court held, in *People v. Reddick* (1988), 123 Ill. 2d 184, that the then-existing jury instructions for the offenses of murder and volun-

tary manslaughter failed to properly assign the burden of establishing the mitigation necessary for a conviction on the less serious offense. The court decided the present defendant's appeal about five months after the decision in *Reddick*. At no time did counsel for the present defendant raise the *Reddick* issue or ask the court to reconsider the defendant's appeal, while it was pending in this court, in light of the earlier holding in *Reddick*.

The majority initially concludes that the defendant received ineffective assistance of counsel because of his attorney's failure to raise the *Reddick* issue on appeal from the judgment of conviction. (162 Ill. 2d at 521-22.) After reaching that conclusion, however, the majority goes on to address what it apparently believes is a distinct issue in the case. The majority phrases this separate, additional question as whether the defendant must be granted a new trial because of the *Reddick* violation. (162 Ill. 2d at 522.) In the discussion that follows, I will examine first the difficulties of this latter question, and I will then consider the merits of the defendant's ineffective-assistance claim.

I

A defendant is not entitled to a new trial even on grounds of constitutional error if it can be said that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) In determining whether the present defendant is entitled to a new trial because of *Reddick* error, the majority's discussion accepts without question the State's assumption that a *Reddick* violation is constitutional in nature and hence subject to the *Chapman* test.

I realize, of course, that both this court and the United States Court of Appeals for the Seventh Circuit have characterized various errors in the former jury instructions for murder and voluntary manslaughter as

constitutional in nature. (See *Flowers v. Illinois Department of Corrections* (7th Cir. 1992), 962 F.2d 703; *Taylor v. Gilmore* (7th Cir. 1992), 954 F.2d 441, *rev'd* (1993), 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112; *United States ex rel. Fleming v. Huch* (7th Cir. 1991), 924 F.2d 679; *Rose v. Lane* (7th Cir. 1990), 910 F.2d 400; *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129; *People v. Shields* (1991), 143 Ill. 2d 435; *People v. Flowers* (1990), 138 Ill. 2d 218.) The time might be ripe to reexamine this issue, however, in light of a number of recent opinions on this subject by the Seventh Circuit, as well as one by the United States Supreme Court.

A close examination of *Reddick* reveals that the opinion "reads like a statutory decision." (*Flowers v. Illinois Department of Corrections*, 962 F.2d at 708 (Easterbrook, J., concurring).) Although the court in *Reddick* characterized the problem with the pattern jury instructions as "grave error" (*Reddick*, 123 Ill. 2d at 198), the court did not describe the error as constitutional in origin or effect. Only once in the *Reddick* opinion does the word "constitutional" appear—and then in the course of the court's conclusion that the prosecution is not required to present evidence of a mitigating mental state to sustain a conviction for voluntary manslaughter. *Reddick*, 123 Ill. 2d at 195 ("we further recognize the long-established constitutional, common law and statutory principle that, to sustain a conviction, the People must prove beyond a reasonable doubt every element of an asserted crime").

In concluding that the then-current pattern jury instructions on murder and voluntary manslaughter misallocated the burden of proof, *Reddick* relied not on the United States or Illinois Constitution, but on section 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 3—2), which governs affirmative defenses. Under that provision, the defendant must present "some

evidence" to raise an affirmative defense; if an affirmative defense other than insanity is properly raised, the burden then falls on the prosecution to disprove it.

The *Reddick* court noted that section 3—2 was silent on what issues should be regarded as affirmative defenses in homicide trials, but the court nonetheless found that the legislature must have intended for that statute to apply to the mitigating mental states at issue in voluntary manslaughter. (*Reddick*, 123 Ill. 2d at 195-97.) The court based this decision on its reading of the language of section 3—2 and on the legislative history of that provision. The court concluded:

> "Thus, under the 1961 Code, if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge of murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless, and must also prove beyond a reasonable doubt the statutory elements of murder.

> The burden-of-proof instructions regarding both voluntary manslaughter and murder in both of these cases were thus incorrect in placing upon the People the burden of proving the existence of intense passion or unreasonable belief in justification. The instructions should have placed upon the People the burden of disproving the existence of either of these two states of mind." *Reddick*, 123 Ill. 2d at 197.

In reexamining this question, the Seventh Circuit stated, in *Taylor v. Gilmore* (7th Cir. 1992), 954 F.2d 441, 449, *rev'd on other grounds* (1993), 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112, "*Reddick*, therefore, does not rest upon federal due process principles, but rather is controlled solely by the Illinois Criminal Code \*\*\*. Any indications to the contrary in our prior decisions are disavowed." Just as the instructional defect found by *Reddick* does not establish a violation of the United States Constitution and thus would not by itself form the basis for Federal *habeas* relief (*Estelle v.*

*McGuire* (1991), 502 U.S. 62, 116 L. Ed. 2d 385, 112 S. Ct. 475), the same defect should not present an independent ground for relief under the Illinois Post-Conviction Hearing Act, which provides a forum only for allegations of constitutional error, Federal or State. 725 ILCS 5/122—1 through 122—7 (West 1992); *People v. Hall* (1993), 157 Ill. 2d 324, 330-31; *People v. Enoch* (1991), 146 Ill. 2d 44, 50.

The Supreme Court's recent decision in *Gilmore v. Taylor* (1993), 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112, is not to the contrary. In that case, the court considered the holding of the Seventh Circuit that the Illinois jury instructions used for murder and voluntary manslaughter violated due process because they could allow the jury to return a verdict of murder without having considered whether the defendant was guilty of voluntary manslaughter instead. In concluding that such a decision would be deemed to have announced a "new rule" that could not be given retroactive effect, the Supreme Court rejected the defendant's argument that existing constitutional precedent had dictated the circuit court's ruling. To the same effect here, if the rule in *Reddick* is also not dictated by existing constitutional precedent, one may wonder whether it is constitutionally based at all.

Even if it is granted that *Reddick* violations are constitutional in nature, the majority is using an incorrect standard of review when it simply asks whether the violation in this case was harmless beyond a reasonable doubt. (162 Ill. 2d at 522.) What this analysis forgets is the manner in which the issue comes before us for review.

This is not a direct appeal from a judgment of conviction, but instead an appeal in a post-conviction proceeding. The Post-Conviction Hearing Act provides an offender with the opportunity to challenge his

conviction and sentence for violations of Federal and State constitutional rights. (725 ILCS 5/122—1 through 122—7 (West 1992).) "The function of a post-conviction proceeding is not to relitigate the defendant's guilt or innocence but to determine whether he was denied constitutional rights. [Citation.]" (*People v. Shaw* (1971), 49 Ill. 2d 309, 311.) Considerations of *res judicata* and waiver limit the scope of post-conviction review "to constitutional matters which have not been, and could not have been, previously adjudicated." (*People v. Winsett* (1992), 153 Ill. 2d 335, 346.) Accordingly, a post-conviction court will not ordinarily consider issues that were previously raised in the appeal from the underlying judgment of conviction, nor will it consider issues that could have been raised on appeal but were not. *People v. Collins* (1992), 153 Ill. 2d 130, 135; *People v. Ruiz* (1989), 132 Ill. 2d 1, 9.

Because defense counsel could have argued the *Reddick* issue on direct review but failed to do so, the only proper question in this case, a collateral challenge to the defendant's convictions, is whether counsel was constitutionally ineffective for failing to raise that issue. Under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, a defendant cannot prevail on an ineffective-assistance claim unless he establishes that he was prejudiced by a deficiency in counsel's performance.

The *Strickland* standard for judging claims of ineffective assistance of counsel differs in several important respects from the test of *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, for assessing the harmlessness of constitutional errors. Under *Strickland*, the burden properly falls on the defense rather than the prosecution, and the defendant must show both that counsel was professionally deficient and that he was prejudiced as a consequence of counsel's

performance. In contrast, *Chapman* requires the State to establish the harmlessness of the constitutional error beyond a reasonable doubt.

The differences between these two standards are substantial. As the Supreme Court has explained, the outcome under the sixth amendment ineffectiveness inquiry will not always be the same as the outcome under the standard appropriate to the underlying substantive claim. (*Kimmelman v. Morrison* (1986), 477 U.S. 365, 380-82, 91 L. Ed. 2d 305, 323-24, 106 S. Ct. 2574, 2586-87.) Discussing this question in the fourth amendment context, the Court has stated:

> "As is obvious, *Strickland*'s standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." *Morrison*, 477 U.S. at 382, 91 L. Ed. 2d at 323-24, 106 S. Ct. at 2586-87.

Indeed, the substantial differences between the *Strickland* test and other standards of review remove any incentive for defense counsel to "sandbag," or to deliberately withhold the presentation of an argument at trial or on direct appeal in the hope or expectation of later achieving a favorable result under the guise of an ineffective-assistance claim. As the *Morrison* Court explained, again in relation to the fourth amendment issue involved there:

> "[W]hen an attorney chooses to default a Fourth Amendment claim, he *** loses the opportunity to obtain direct review under the harmless-error standard of *Chapman v.*

*California* [citation], which requires the State to prove that the defendant was not prejudiced by the error. By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted." *Morrison,* 477 U.S. at 382 n.7, 91 L. Ed. 2d at 324 n.7, 106 S. Ct. at 2587 n.7.

What the *Morrison* Court stated in the fourth amendment context is equally relevant here. The present defendant's challenge to the jury instructions used in his case must be evaluated through the sixth amendment lens provided by *Strickland,* rather than under *Chapman's* harmless-error test, assuming the latter standard applies to our consideration, on direct appeal, of a *Reddick* violation.

## II

I need not repeat here the prudential concerns that mandate application of the *Strickland* test to the present defendant's claim, and the principles of law that guide our resolution of this constitutional question are well settled. Under *Strickland,* a defendant who raises a claim of ineffective assistance of counsel must show both that counsel was deficient and that counsel's deficiency was prejudicial to the defendant. If no prejudice ensued from counsel's representation, a court may dispose of the ineffectiveness claim on that ground alone, without considering separately whether counsel was deficient for the reason alleged by the defendant. (*Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) Contrary to the majority's determination, the record here establishes that the defendant was not prejudiced by counsel's failure on appeal to argue *Reddick* error.

The circuit judge in the proceedings below granted the defendant an evidentiary hearing on his post-conviction petition. Following a lengthy and exhaustive hearing, the judge denied the petition. With respect to the *Reddick* claim, the judge specifically found that

defense counsel was not ineffective in failing to raise the *Reddick* issue on direct review. The judge believed that the evidence was not such that the defendant would have been found guilty of the less serious offense of voluntary manslaughter even if jury instructions satisfying the concerns of *Reddick* had been used at trial. More generally, the judge found that it was highly unlikely that a reasonable jury could have reached a different result in this case, and that the defendant's testimony was so contradicted by the other evidence that his claim of self-defense was highly improbable. It is clear that the post-conviction judge did not believe that the defendant had made the requisite showing of prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) I see no reason to depart from this assessment by the circuit judge, who carefully considered the allegations in the defendant's post-conviction petition, the evidence introduced at trial, and the testimony presented by the parties at the post-conviction hearing.

The conclusions reached by the post-conviction judge are consistent with this court's own findings on direct appeal—findings that the majority now ignores. In its earlier opinion, this court affirmed the defendant's conviction for murder and rejected his contentions that he did not possess a mental state necessary for murder, that he was acting in self-defense, and that he could be guilty only of the lesser offenses of voluntary or involuntary manslaughter. Although the court was not asked at that time to consider application of the *Reddick* decision to the defendant's case, its findings on direct appeal are clearly relevant here.

As was stated in the earlier opinion, the trial evidence showed that the defendant was a fleeing felon at

the time of the attempted arrest, that the entire incident was brief, lasting only a few minutes, and that the defendant shot the police officer five times during that period. This court concluded then that the officer received the brunt of the beating, while the defendant escaped "basically unscathed." (*Salazar*, 126 Ill. 2d at 451.) In addition, the court rejected the defendant's contention that the officer initiated the fight, and found instead that the defendant was the aggressor and, moreover, was the dominant figure in the battle. *Salazar*, 126 Ill. 2d at 450-54.

On this record, I do not believe that it can be said that the defendant was prejudiced by his attorney's failure to raise the *Reddick* issue on appeal from the judgment of conviction. This court's earlier findings demonstrate that reversal for a new trial would not have been warranted, even if counsel on appeal had argued *Reddick* error; by the same token, the outcome of the original trial was not made unreliable by counsel's failure to press the same contention at that earlier level.

For the reasons stated, I do not agree with the majority's conclusion that defense counsel was ineffective for failing to raise the *Reddick* issue in the original appeal, and I would consider here the remaining issues asserted by the defendant in this post-conviction proceeding.