**Billy B. TUCKER, Petitioner–Appellant,**

v.

**Rodney J. AHITOW, Respondent–Appellee.**

No. 94–2001.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1995.

Decided April 12, 1995.

Jerold S. Solovy, Douglas A. Graham (argued), C. John Koch, Jenner & Block, Chicago, IL, for petitioner-appellant Billy B. Tucker.

Bradley P. Halloran (argued), Rita M. Novak, Office of the Atty. Gen., Chicago, IL, for respondent-appellee Rodney J. Ahitow, Warden.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

On November 9, 1986, Billy Tucker shot and killed Kevin Neuman in a bar fight.

Despite Tucker's claim that he was justified in shooting Neuman, a jury convicted Tucker of murder. He appealed to the Illinois Appellate Court which affirmed his conviction; his request for leave to appeal to the Supreme Court of Illinois was denied. Tucker then filed a petition for habeas corpus in the district court, which denied it. Tucker has appealed the district court's order, and we affirm.

The events of that night are set out in full detail in the Illinois Appellate Court's opinion. *People v. Tucker,* 176 Ill.App.3d 209, 125 Ill.Dec. 670, 530 N.E.2d 1079 (1988), *appeal denied,* —— Ill.2d ——, 130 Ill.Dec. 488, 537 N.E.2d 817. Accordingly, our recitation of the facts will be limited to those necessary for our consideration of the case. The altercation occurred at T's Tap in Plano, Illinois, where Tucker and Neuman exchanged angry words. At one point, Tucker told Neuman that if he wanted to "whip [his] ass, [he could] come over and try." Neuman then challenged Tucker to fight outside. On his way out of the bar, Tucker took the precautionary step of obtaining a gun from a companion, which he put in the waist of his pants. Apparently, Neuman had quite a reputation among the locals as a former marine with special training in fighting who fought frequently and successfully, usually inflicting severe physical abuse on his opponent.

Once outside, the combatants engaged in some verbal and physical jostling. At this point, Tucker realized that he was outmatched and drew his gun. This prompted more verbal sparring and taunting. Finally, though, the two agreed to stop fighting provided that Tucker return to the bar, retrieve his keys and cigarettes, and leave. Neuman demanded that Tucker put his gun away before returning to the bar, but Tucker refused. Tucker would only drop the gun to his side, neither returning it to his waistband nor brandishing it at Neuman. Neuman then returned to the bar, and Tucker followed.

At this point, the testimony of bar patrons varies somewhat. The evidence indicates that Neuman returned to his bar stool, and Tucker walked past him to retrieve his personal effects. By all accounts, Neuman "made a move" at Tucker. Tucker then, pistol still in hand, turned around. Tucker testified that when he turned around, he saw Neuman coming at him with his arms up. Tucker then shot Neuman in the stomach, but this wound was not enough to kill Neuman. Tucker fired again and shot Neuman in the chest; this second shot killed Neuman.

At Tucker's murder trial, the State tendered an Illinois pattern jury instruction based on 720 ILCS 5/7–4(c) which states:

Use of Force by the Aggressor. The justification described in the preceding Sections of this Article [1] is not available to a person who:

\* \* \* \* \* \*

(c) Otherwise initially provokes the use of force against himself, unless:

(1) Such force is so great that he reasonably believes that he is in imminent danger or death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force.

The State tendered the instruction based only on § 7–4(c)(1); it did not tender an instruction based on § 7–4(c)(2) under the belief that it did not apply. Tucker objected to this instruction, arguing that only a general self-defense instruction should be given. Tucker did not argue that an instruction based on the withdrawal provision should be given. The trial court overruled Tucker's objection and permitted the § 7–4(c)(1) instruction. The jury found Tucker guilty of murder.

On appeal to the Illinois Appellate Court, one of Tucker's arguments was that the withdrawal instruction should have been given. That court rejected Tucker's arguments for

---

1. In this case, this phrase refers to § 7–1, "Use of force in defense of person."

two reasons. First, it held that Tucker did not withdraw because he never put down the gun. 125 Ill.Dec. at 677, 530 N.E.2d at 1086. Second, relying on the Committee Comments accompanying the enactment of the statute in 1961, it held that the withdrawal provision applies only to the use of non-deadly force by the defendant. *Id.* 125 Ill.Dec. at 677–78, 530 N.E.2d at 1086–87. The appellate court affirmed Tucker's conviction in all respects.

In his petition for habeas corpus, Tucker argues that the Illinois trial and appellate courts erred in holding that he was not entitled to the withdrawal instruction because two Illinois cases support his argument that he is entitled to the justification defense. Specifically, he claims that these court rulings have altered the criminal law in Illinois and applied new rules retroactively to his case; this, he contends, deprived him of fair warning that his conduct was such that he could not claim justification pursuant to §§ 7–1, 4. We are not persuaded.

■■■ Tucker correctly contends that a defendant is entitled to the application of the relevant criminal law in place at the time of his crimes. Consequently, state courts are not free to overrule prior precedent retroactively and apply a newly enlarged definition of a criminal offense to a defendant's case. *Cole v. Young,* 817 F.2d 412 (7th Cir.1987). Nor are they permitted to eliminate a defense to a crime after a defendant has committed that crime and deny him the use of that defense. *United States ex rel. Reed v. Lane,* 759 F.2d 618 (7th Cir.1985). State courts can, however, interpret a statute and apply that interpretation to the defendant's conduct if the statute was "sufficiently open to the interpretation." *Free v. Peters,* 12 F.3d 700, 702 (7th Cir.1993).

■■■ Notwithstanding Tucker's claims that the Illinois courts have changed the rules of the game by denying him the use of the justification defense, we believe that their decisions were based on a straightforward application of § 7–4(c)(2). The statute requires that the aggressor "indicates clearly to the assailant that he desires to withdraw and terminate the use of force...." Applying the statute to the Tucker's conduct, the

Illinois courts concluded that Tucker had not withdrawn. Tucker had drawn his gun in the midst of hostilities between himself and Neuman and pointed the gun at Neuman, indicating his willingness to shoot Neuman. After the two men reached a tentative truce, Tucker refused to put his gun away, even after Neuman demanded that he do so. Tucker's behavior hardly constituted a clear indication to Neuman that Tucker wished to withdraw.

This decision does not, as Tucker would have us believe, establish as a matter of the law of Illinois that any defendant as aggressor who produces a gun and fails to relinquish it is precluded from claiming withdrawal.[2] Rather, it simply means that on the facts of this case, Tucker's refusal to disarm himself demonstrated that he did not withdraw from the fray. We do not see any error in this position.

As for Tucker's two cases, they do not support his argument. First, neither deals with withdrawal pursuant to § 7–4. Second, the circumstances of the two cases are markedly different than Tucker's.

The first case, *People v. Santiago,* 108 Ill.App.3d 787, 64 Ill.Dec. 319, 439 N.E.2d 984 (1982), concerned a defendant who fired a gun into an empty car and killed a bystander. Tucker hangs his hat on one sentence in *Santiago,* 64 Ill.Dec. at 330, 439 N.E.2d at 995: "A person may fire a weapon, not to kill, but to scare the assailant away or to divert his attention so that a third party may escape." Tucker claims that this sentence supports his claim that he could have withdrawn without relinquishing the gun. The flaws in this argument are manifest.

First, the issue in *Santiago* was voluntary versus involuntary manslaughter, not justification. Second, Tucker did not fire his gun to scare or divert attention; he shot Neuman to cause Neuman great bodily harm. Given the circumstances in *Santiago,* to contend that the Illinois Appellate Court overruled *Santiago* by its holding in Tucker's case is ridiculous.

Tucker also relies on *People v. Forte,* 269 Ill. 505, 110 N.E. 47 (1915). While the issue in this case was justification, it offers no more support for Tucker's position than *San-*

2. All in all, this may not be a bad rule.

*tiago.* In *Forte,* 110 N.E. at 509–10, a jilted suitor had been terrorizing his former fiancée and her family. After being arrested for assaulting the woman's mother and sister, he returned to their house and stood across the street. *Id.* at 508–09. The woman came out of the house, stood on the front lawn, and fired a revolver in the air in an attempt to scare the man away; instead, the man came after her. *Id.* The woman attempted to escape, but the man caught her. *Id.* He was beating and choking her when the woman's brother came outside; the brother then proceeded to bludgeon the attacker with a hand-axe until he was dead. *Id.*

The Supreme Court of Illinois framed the case in terms of self-defense. It held that because the woman had the right to use deadly force to protect herself, so did her brother in defense of her. *Id.* In reaching its conclusion, it held that the woman did not "make a deliberate assault on [the man]" and was therefore not the aggressor. *Id.* at 509–10. It stated further that even if the woman was the aggressor, she did all that she could to escape from the man. *Forte,* then, is not at all analogous to Tucker's case. This woman was not an aggressor; even if she was, *Forte* would properly be analyzed pursuant to § 7–4(c)(1) rather than § 7–4(c)(2).[3]

This leaves us back where we started: with a statute, very little precedent interpreting it, and Tucker's actions. The Illinois courts simply applied the language of the statute to Tucker's behavior and concluded that he did not withdraw. As we stated previously, this is an altogether proper conclusion. Having made this determination, we need not delve into the Illinois Appellate Court's statement that § 7–4(c)(2) does not apply to the use of deadly force.

Accordingly, the district court's order denying Tucker's petition for habeas corpus is therefore

AFFIRMED.

---

**3.** Of course, the Illinois Supreme Court did not decide *Forte* pursuant to the statute before us because this case predates the enactment of the statute by several decades. The statute, though, does embody many concepts developed through the common law, so it is not altogether improper to discuss that court's rationale in terms of the statute.